United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 20, 2022

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 18-36893** |
| USA PROMLITE TECHNOLOGY INC, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| | § | |
| ENVIRO-LITE SOLUTIONS INC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-7003** |
| | § | |
| EDINBURG CONSOLIDATED ISD, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Third-party defendant, First Class Electrical Services, LLC, brings a *Daubert* challenge

against two of Edinburg Consolidated ISD's proposed non-retained experts, Jerry Daniel and

Delisa Hamilton, and a TDLR Inspection Report contained within Edinburg Consolidated ISD's

Exhibit 59.  On August 26 & September 23, 2022, this Court held a hearing on the challenge.  For

the reasons stated below, the Court finds that the challenge is hereby sustained in part and over-

ruled in part.  The Court also finds that Edinburg Consolidated ISD properly designated Jerry

Daniel and Delisa Hamilton as non-retained experts in accordance with Federal Rule of Bank-

ruptcy Procedure 7026, incorporating Federal Rule of Civil Procedure 26.

## I.   BACKGROUND

1. This case concerns five state law causes of action lodged by Enviro-Lite Solutions, LLC
   ("*Enviro-Lite*" or "*Plaintiff*") against Edinburg Consolidated ISD ("*ECISD*") for electrical
   work contracted for and performed at several ECISD schools.[1]  As a third party plaintiff,
   ECISD has also asserted nine state law causes of action against Enviro-Lite, USA Promlite
   Technology, Inc. ("*Promlite*"), E-Con Group, and First Class Electrical Services, LLC

---
[1] ECF No. 77.

("*First Class*"), arising out of the same transaction.[2]

2.  A two-week trial is set to commence in this case on January 17, 2023.

3.  On May 6, 2022, ECISD filed its Witness and Exhibit list, listing Jerry Daniel ("*Daniel*") and Delisa Hamilton ("*Hamilton*") each as a "Non-Retained Expert and Fact Witness."[3] ECISD also submitted a "TDLR File" as its Exhibit 59.[4]

4.  At a hearing on May 10, 2022, ECISD's counsel represented that Exhibit 59 is the Texas Department of Licensing and Regulation's entire file on the matter being litigated.[5]

5.  On May 20, 2022, First Class objected to ECISD's Exhibit 59.[6]

6.  On July 7, 2022, the Court overruled all of First Class's objections to ECISD's Exhibit 59, ordering that Exhibit 59 was not pre-admitted but may be offered at trial subject to further objections.[7]

7.  On July 21, 2022, First Class Electrical Services, LLC filed a single pleading self-styled as "Third Party Defendant First Class Electrical Services, LLC *Daubert* Challenge to the Testimony of Jerry Daniel and Delisa Hamilton" challenging both the admission of the expert testimony of Daniel and Hamilton and a TDLR Inspection Report included in Exhibit 59.[8]

8.  On July 29, 2022, Enviro-Lite Solutions, LLC and USA Promlite Technology, Inc. filed its "Plaintiff & Counter-Defendant Enviro-Lite Solutions, LLC's and Debtor & Third-Party Defendant USA Promlite Technology, Inc.'s Notice Of Adoption By Reference Of First Class Electrical Services, LLC's *Daubert* Challenge To The Testimony Of Jerry Daniel And Delisa Hamilton."[9]

9.  On August 11, 2022, Edinburg Consolidated Independent School District filed its "ECISD's Response in Opposition to Third Party Defendant First Class Electrical Services, LLC's *Daubert* Challenge to the Testimony of Jerry Daniel and Delisa Hamilton."[10]

10. On August 19, 2022, First Class Electrical Services, LLC filed its "Third Party Defendant First Class Electrical Services, LLC's Reply To ECISD's Response In Opposition To Third Party Defendant First Class Electrical Services, LLC's *Daubert* Challenge To The Testimony Of Jerry Daniel And Delisa Hamilton."[11]

---

[2] *See* ECF No. 78.
[3] ECF No. 262.
[4] *Id.*
[5] ECF No. 263 at 9:18–10:2.
[6] ECF No. 266.
[7] ECF No. 284.
[8] ECF No. 286.
[9] ECF No. 289.
[10] ECF No. 298.
[11] ECF No. 300.

11. On August 19, 2022, Enviro-Lite Solutions, LLC filed its "Plaintiff & Counter-Defendant Enviro-Lite Solutions, LLC's And Debtor & Third-Party Defendant USA Promlite Technology, Inc.'s Notice Of Adoption By Reference Of First Class Electrical Services, LLC's Reply To ECISD's Response To *Daubert* Challenge To The Testimony Of Jerry Daniel And Delisa Hamilton."[12]

12. On August 19, 2022, Edinburg Consolidated Independent School District filed its ECISD's Response In Opposition To Plaintiff & Counter-Defendant Enviro-Lite Solutions, LLC's and Debtor & Third-Party Defendant USA Promlite Technology, Inc.'s Notice Of Adoption By Reference Of First Class Electrical Services, LLC's *Daubert* Challenge To The Testimony Of Jerry Daniel And Delisa Hamilton [ECF No. 289]."[13]

13. On August 24, 2022, the Texas Department of Licensing & Regulation ("*TDLR*") filed its "Limited Joinder Of The Texas Department Of Licensing And Regulation To Third Party Defendant First Class Electrical Services, LLC *Daubert* Challenge To The Testimony Of Jerry Daniel And Delisa Hamilton."[14]

## II.    JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court lacks both arising in and arising under jurisdiction because Plaintiff's causes of action for breach of contract, promissory estoppel, negligent misrepresentation, common law fraud, and requests for declaratory relief[15] are neither created or determined by title 11 nor do they arise only in bankruptcy.[16]   Under 28 U.S.C. § 157(a), "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 ...."[17]   For jurisdiction to "arise under" title 11, the cause of action asserted by the plaintiff must be either created or determined by title 11.[18]   "Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]."[19]   "Arising in" jurisdiction requires that the proceeding "would have no existence outside of the bankruptcy,"

---

[12] ECF No. 301.
[13] ECF No. 303.
[14] ECF No. 306.
[15] ECF No. 77.
[16] *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987) (alteration in original).
[17] Emphasis added.
[18] *In re Wood*, 825 F.2d at 96.
[19] *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 267 (5th Cir. 2005).

where the asserted causes of action are not based on any provision of the Bankruptcy Code.[20]

Plaintiff's causes of action in this case do not arise under or arise in Title 11, they arise under state law.[21]  Plaintiff does not argue that their causes of action are based on substantive rights provided by the Bankruptcy Code and this Court does not find any such rights relevant to this proceeding.  Additionally, this case landed in this Court only because Enviro-Lite removed it based on Promlite's underlying bankruptcy case.[22]  If not for Promlite's bankruptcy, the claims asserted could have been adjudicated on the merits in the state court.[23]

Nevertheless, this Court has related to jurisdiction over this matter pursuant to 28 U.S.C. § 157(c)(1), which provides "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."  A proceeding is "related to" a case under title 11 "when the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[24]  In other words, "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[25]  Here, Promlite is the debtor in the underlying Chapter 7 bankruptcy case.[26]  The outcome of this adversary proceeding could conceivably impact the administration of Promlite's bankruptcy case because if ECISD

---

[20] *In re Wood*, 825 F.2d at 880.

[21] *See, e.g., Apache Corp. v. Castex Offshore, Inc*. (In re Castex Energy Partners, LP), 584 B.R. 150, 155, 157 (Bankr. S.D. Tex. Feb. 1, 2018) (finding that plaintiff's breach of contract claim and defendant's counter claims were state law claims not brought under title 11) (citing In re Petroleum Products & Serv., Inc., 556 B.R. 296, 302 (Bankr. S.D. Tex. 2016)).

[22] *See* ECF No. 1; Case No. 18-36893 at ECF No. 1.

[23] *See In re Castex Energy Partners, LP*, 584 B.R. at 155 (finding that because the suit was originally filed in state court and the breach of contract claim and counterclaims asserted were based on state law, the suit could have proceeded to the merits of the claims in state court.).

[24] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted).

[25] *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988)). *See also, e.g.*, *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir. 2007); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (holding that "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate.").

[26] Case No. 18-36893.

prevails on its third party claims against Promlite, it would result in additional liability against the estate that could substantially alter the distributions to creditors in the underlying Chapter 7. As such, the Court holds jurisdiction pursuant to 28 U.S.C. § 1334(b) and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012-6.[27]

Furthermore, this Court may only hear a case in which venue is proper.[28] 28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Promlite had its principal place of business in Sugar Land, Texas[29] and therefore, venue of this proceeding is proper.

This Court must evaluate whether it has constitutional authority to enter a final judgment in this case. In *Stern v. Marshall,* the Supreme Court held that whether a bankruptcy court can enter a final judgment in a case depends on whether the cause of action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.[30] This adversary proceeding involves state law claims between the debtor and four non-debtor parties and would not necessarily be resolved in the claims allowance process. Nevertheless, while bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[31] While the claims in the instant matter are non-core, all parties have consented to this Court's entry of final orders on all non-core claims.[32] Additionally, a court may still issue interlocutory orders in proceedings where the court lacks

---

[27] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[28] 28 U.S.C. § 1408.
[29] Case No. 18-36893, ECF No. 1.
[30] 564 U.S. 462 (2011).
[31] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern*, 564 U.S. at 480.
[32] ECF Nos. 2–4, 75, 82.

authority to issue a final judgment.[33]  An order resolving fewer than all of the claims presented in

a complaint is interlocutory.[34]  Resolving a *Daubert* challenge results in an interlocutory order

because no causes of action are resolved in ruling on a *Daubert* challenge.  Accordingly, the order

accompanying this opinion is interlocutory and may be entered without a determination of the

Court's constitutional authority to enter a final judgment.[35]

### III.   ANALYSIS

#### A.  *Daubert*/Federal Rule of Evidence 702

First Class argues that Daniel and Hamilton's testimony, as well as "conclusory statements

in the TDLR report" should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

509 U.S. 579 (1993).  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise, if:
>     (a) the expert's scientific, technical, or other specialized knowledge will help
>         the trier of fact to understand the evidence or to determine a fact in issue;
>     (b) the testimony is based on sufficient facts or data;
>     (c) the testimony is the product of reliable principles and methods; and
>     (d) the expert has reliably applied the principles and methods to the facts of the
>         case.

In *Daubert*, the Supreme Court set forth five factors courts should consider when exercising their

gate-keeping function under Federal Rule of Evidence 702 and making their preliminary assess-

ments of whether the reasoning underlying expert testimony is scientifically valid and can properly

be applied to the facts in issue.[36]  The five factors are: (1) whether the technique in question has

been tested; (2) whether the technique has been subject to peer review and publication; (3) the

error rate of the technique; (4) the existence and maintenance of standards controlling the

---

[33] *Sommers v. Anixter, Inc. (In re Trailhead Eng'g LLC*, No. 18-32414, 2020 Bankr. LEXIS 3547, at *6 (Bankr. S.D. Tex. Dec. 21, 2020) (citation omitted).
[34] *Id.*
[35] *Id.*
[36] *Daubert*, 509 U.S. 579, 592–93 (1993).

technique's operation; and (5) whether the technique has been generally accepted in the scientific community.[37]  *Daubert* applies equally to experts that rely on the application of scientific principles and those that rely on skill or experience-based observation.[38]  "[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."[39]  Nevertheless, "[v]igourous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible evidence."[40]  The Court's gatekeeping role is not a substitute for the adversarial process.[41]

Daubert and its principles apply to all expert testimony, not just "scientific" testimony.[42] The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible and reliable,[43] but need not satisfy each Daubert factor.[44]  Daubert requires that the trial court determine admissibility under Rule 702 by following the directions provided in Rule 104(a).[45]  When making its determination under Rule 104(a), "the court is not bound by evidence rules, except those on privilege."[46]  Experts do not need to be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility.[47]  Nonetheless, courts need not admit testimony that is based purely on the ipse dixit[48] of the expert.[49]  Further, even if the expert is qualified, the basis of his opinion must

---

[37] *Id.* at 593–94.
[38] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999).
[39] *Id.* at 153.
[40] *Daubert*, 509 U.S. at 596.
[41] *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002).
[42] *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147, (1999).
[43] *See* FED. R. EVID. 104(a); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir.1998).
[44] *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004).
[45] *Daubert,* 509 U.S. at 592.
[46] FED. R. EVID. 104(a).
[47] *Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009).
[48] *See* Merriam Webster's Dictionary for reference, defining *ipse dixit* as "an assertion made but not proved".
[49] *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, (1997).

be reliable and the underlying methodology must have been correctly applied to the case's particular facts in order for his testimony to be relevant.[50] "In short, expert testimony is admissible only if it is both relevant and reliable."[51]

Expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed."[52] If the facts and data relied on are the sorts that experts in that field would reasonably rely on, then those facts "need not be admissible for the opinion to be admitted."[53] As such, experts may base their opinions on otherwise inadmissible information, such as hearsay, so long as the information is the sort reasonably relied on in the expert's field.[54] The purpose of Rule 703 is largely practical—experts generally base their opinions on information which, to be admissible in court, would entail "the expenditure of substantial time in producing and examining various authenticating witnesses."[55] "Because experts may use their past experience and professional judgment to make critical decisions on the basis of such information outside of court, Rule 703 was intended 'to bring the judicial practice into line with the practice of the experts themselves when not in court.'"[56] Courts nevertheless must serve a gatekeeping function with respect to Rule 703 opinions to ensure "the expert isn't being used as a vehicle for circumventing the rules of evidence."[57] "Rule 703 'was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.'"[58]

---

[50] *Daubert,* 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir.2007).
[51] *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 243–44 (5th Cir.2002).
[52] FED. R. EVID. 703.
[53] *Id.*
[54] *Factory Mut. Ins. Co. v. Alon USA L.P.,* 705 F.3d 518, 524 (5th Cir.2013).
[55] *Id.* (quoting FED. R. EVID. 703, advisory committee's note).
[56] *Id.* at 524 (quoting FED. R. EVID. 703, advisory committee's note).
[57] *Id.* (quoting *In re James Wilson Assocs.,* 965 F.2d 160, 173 (7th Cir.1992)).
[58] *Id.* (quoting *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,* 387 F.Supp.2d 794, 808 (N.D.Ill.2005)). The rule "was never intended to allow oblique evasions of the hearsay rule." *Id.* (quoting *Loeffel,* 387 F.Supp.2d at 808).

As stated, the party putting forth the expert testimony has the burden of showing that the testimony is reliable, but "need not satisfy each *Daubert* factor."[59]  Although First Class, Enviro-Lite, Promlite, and the TDLR failed to provide a single citation to case law, statutory authority, or the Federal Rules of Evidence in support of their respective *Daubert* challenges, "it is an abuse of discretion for a district court to fail to create a record of its *Daubert* inquiry and its basis for ad-mitting expert testimony."[60]  Therefore, this Court will consider each *Daubert* challenge in turn, starting with of First Class's challenges.

## B.  First Class's *Daubert* Challenges

### 1.  Whether Daniel and Hamilton were properly designated under Federal Rule of Civil Procedure 26

First Class generally asserts that "Hamilton and Daniel are not designated, did not perform the requisite investigation, and simply are not qualified to testify on the 'expert' issues for which ECISD seeks to introduce their testimony."[61]  The Court will first consider the designation issue. Under Federal Rule of Civil Procedure 26(a)(2), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."[62]  Only witnesses that are retained or specially employed must provide an expert report.[63]  Non-retained experts need not provide an expert report, but the initial disclosures must state "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."[64]

---

[59] *United States v. Hicks*, 389 F.3d 514, 525 (5th Cir. 2004).
[60] *Carlson v. Bioremedi Therapeutic Sys.*, 822 F.3d 194, 201 (5th Cir. 2016).
[61] ECF No. 286.
[62] FED. R. BANKR. P. 7026 (incorporating FED. R. CIV. P. 26).
[63] FED. R. CIV. P. 26(a)(2)(B).
[64] *Id.* 26(a)(2)(C).

ECISD's amended Rule 26 initial disclosures designated Hamilton and Daniel as witnesses, stating that the general subject of their testimony will be based on reports, deposition testimony, and mental impressions.[65]  No other information was provided.[66]  In the Southern District of Texas, a summary of facts under Rule 26 has been construed to mean "a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information."[67]  Although designations under Rule 26(a)(2)(C) do not require undue detail, they do require some specificity.[68]  Merely referring to a large body of information does not qualify as a summary of facts.[69]  ECISD's disclosure did not state the subject matter on which Daniel and Hamilton would testify or include a summary of facts. ECISD did submit its Exhibit 59, which ECISD purports to be TDLR's file, the entity that employs Hamilton and Daniel.[70]  Exhibit 59 as amended contains 215 pages,[71] and as stated, merely submitting a large body of information does not qualify as a summary of facts.

Notwithstanding, the Court notes that at the April 22, 2022 pre-trial conference this Rule 26 designation issue was previously raised and the Court ultimately ruled that "these witnesses will be limited to testimony described in their depositions and the reports submitted, if any."[72] Therefore, this Court altered the requirements under Rule 26(a)(2)(C) as permitted by the Rule.[73] Because ECISD listed both Hamilton and Daniel in their Rule 26 disclosures and both were

---

[65] ECF No. 189.
[66] *Id.*
[67] *Soloranzo v. Passafiume*, No. H-19-3556, 2020 U.S. Dist. LEXIS 186851, at *8 (S.D. Tex. Oct. 8, 2020) (quoting *Tolan v. Cotton*, No. H-09-1324, 2015 U.S. Dist. LEXIS 121717, at *15 (S.D. Tex. Sept. 14, 2015)).
[68] *Soloranzoi*, 2020 U.S. Dist. LEXIS 186851, at *7 (citations omitted).
[69] *Id.* (quoting *Tolan*, 2015 U.S. Dist. LEXIS 121717, at *9).
[70] ECF No. 263 at 9:18–10:2, 47:21–48:10.
[71] ECF No. 262-60.
[72] ECF No. 263 at 39:3–5.
[73] *See* Fed. R. Civ. P. 26(a)(2)(C).

deposed by the opposing parties, the Court finds that Hamilton and Daniel were properly desig-

nated under Rule 26.

Accordingly, First Class's *Daubert* challenge that Hamilton and Daniel were not properly

designated under Rule 26 is overruled.  Daniel and Hamilton will be allowed to provide expert

testimony limited to what is contained in their depositions and reports, subject to exclusions dis-

cussed infra and further objection at trial.

> **2. Whether conclusory statements in the TDLR Inspection Report and Daniel and Hamilton's testimony on the cause of damage to the dimmer switches should be excluded**

First Class challenges the TDLR Inspection Report ("*Inspection Report*") contained within

Exhibit 59 on the basis that it contains the following conclusory statement that is not based on the

proper expert foundation:

> The electrical contractor who performed the work used a neutral that was shared with phase A, B & C. The electrical contractor did not follow the manufacturer's listing and labeling instructions for installation of the dimmers, clearly stating DO NOT share neutral wire, resulting in four (4) fires (contained within the switch boxes) at multiple elementary schools. The conductors in the switch boxes were also damaged due to the fire and will need to be replaced ASAP. All dimmers have been removed and replaced with snap switches at all schools.[74]

According to First Class "there was no actual fire," and damage to the dimmer switches could have

been caused by an electrical storm that affected the schools where the dimmer switches were lo-

cated.[75]  First Class further asserts that Hamilton and Daniel should not be permitted to testify

about the above conclusion because "a proper investigation would have required Hamilton and

Daniel to address and exclude the lightning and power outages as a causation and explain why

numerous other dimmers were not affected if the damages were caused by installation, and it is

---

[74] ECF No. 286-1.
[75] ECF No. 286.

expected ECISD never advised them of those matters, thus rendering any such opinions unfounded and incomplete."[76]

ECISD responds that the statement in question is based on Daniel's inspection of the dimmers and statements made by First Class's owner, Elpidio Huerta ("*Mr. Huerta*").[77] ECISD points to its admitted Exhibit 31, a written statement by Mr. Huerta, stating:

> When I was asked by Jerry Daniels if I knew if neutral wire was being shared by different circuits and was against manufacturer recommendations of installation for dimmers, I answered yes . . . . First Class Electrical Services had failed to verify completion of rewiring of circuit neutrals before installing new dimmers. [78]

ECISD also asserts that Daniel personally inspected the dimmers that caught fire and included a photo of one of four dimmers with burn marks evident on the wall emanating from the dimmer switch.[79]

The Inspection Report was prepared and signed by Daniel.[80]  ECISD has not designated the Inspection Report as an expert report.  However, for both Hamilton and Daniel, ECISD's amended Rule 26(a)(1) initial disclosures states that the general subject of their testimony will be based on reports, deposition testimony, and mental impressions.[81]

To establish reliability under *Daubert*, an expert must provide objective, independent support for his methodology.[82]  If a challenged opinion "is fundamentally unsupported, then it offers no expert assistance to the [finder of fact]."[83]  "The expert's assurances that he has utilized generally accepted [principles] is insufficient."[84]  The relevant consideration under *Daubert* is the

---

[76] *Id.*
[77] ECF No. 298.
[78] ECF No. 262-31.
[79] ECF No. 286-1.
[80] *Id.*
[81] ECF No. 189.
[82] *Caramba v. Nationwide Mut. Fire Ins., Co.*, No. H-19-1973, 2020 U.S. Dist. LEXIS 242250, at *19–20 (S.D. Tex. Dec. 24, 2020) (citing *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013)).
[83] *Id.* (quoting *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005).
[84] *Id.* (quoting *Brown*, 705 F.3d at 536).

reliability of the methodology used in analyzing the information provided to or gathered by the

expert.[85]  The Inspection Report does not provide any analysis or explanation of the methodology

used by Daniel in coming to the conclusion regarding the alleged fires.  The end of Inspection

Report merely states that:

> Electrical inspection was performed per the current state adopted Electrical Code.
> The 2014 National Electrical Code became effective as the State of Texas electrical
> code of September 1, 2014.  This list was what Daniel/Inspector could see without
> testing and tracing out circuits, the possibility does exist that there could be other
> problems that were not visible to the naked eye.[86]

ECISD suggests that Daniel seeing burn marks on the wall and Mr. Huerta's statement is enough

to conclude that the fires were caused by the dimmer switches use of shared neutral wire.[87]  ECISD

makes no attempt to explain which generally accepted principles Daniel used in coming to such a

conclusion.  Because no methodology for the conclusion was provided, the Court cannot determine

whether that methodology was reasonable, and thus, the conclusion itself is not admissible under

Rule 702 and *Daubert*.

As for expert testimony regarding the conclusion, although Daniel is a master electrical

engineer by trade, ECISD has not carried its burden to demonstrate that Daniel's opinion is relia-

ble.  ECISD provides no explanation of the methods Daniel employed in reaching his conclusion

nor any indication of the steps Daniel took while conducting his visual inspection.  Without more,

this Court cannot determine the reliability of Daniel's opinion.

As for Hamilton's testimony regarding the conclusion, a non-retained expert's testimony

is limited to opinions formed during the course of his or her participation in the relevant events of

---

[85] *Id.*(citing *Collins v. Safeco Ins. Co.*, No. 3:18-CV-01788-X, 2020 U.S. Dist. LEXIS 2612, at *2 (N.D. Tex. Jan. 8, 2020)).
[86] ECF No. 286-1.
[87] ECF No. 298 at 3-4.

the case and only to opinions which were properly disclosed.[88]  Nothing in the Inspection Report,

which was signed by Daniel, indicates that Hamilton was involved in the inspection which led to

the conclusion.  As a non-retained expert, Hamilton cannot testify about opinions derived from an

investigation in which she did not participate.

Accordingly, First Class's Daubert challenge to the TDLR Inspection Report as it relates

to the cause of damage to the dimmer switches is sustained. The Inspection Report's conclusion

that "[t]he electrical contractor did not follow the manufacturer's listing and labeling instructions

for installation of the dimmers, clearly stating DO NOT share neutral wire, resulting in four (4)

fires (contained within the switch boxes) at multiple elementary schools[,]" is excluded from evi-

dence.  Any testimony by Jerry Daniel or Delisa Hamilton about that conclusion is likewise ex-

cluded from evidence.

### 3.  Whether Hamilton and Daniel's testimony related to the Intertek Report should be excluded

First Class next challenges any potential testimony of Hamilton or Daniel related to the

Intertek Report, which was already admitted into evidence, alleging that neither are qualified to

testify on issues contained in the Intertek Report or any UL procedures, or testing methodology.[89]

ECISD first responds that neither Hamilton nor Daniel has testified about the procedures or meth-

odology used by Intertek to decide that an LED tube meets safety requirements, and that Daniel's

testimony was merely about why it is important that Intertek certify that products are safe.[90]

ECISD also asserts that Daniel's expertise qualifies him to discuss the National Electric Code and

how the allegedly fraudulent markings on the LED tubes installed violate the National Electric

---

[88] *E.g.*, *Deeds v. Whirlpool Corp.*, No. H-15-2208, 2016 U.S. Dist. LEXIS 143374, at *24 n.9 (S.D. Tex. Oct. 17, 2016).
[89] ECF No. 286.
[90] ECF No. 298 at 5.

Code.[91]  ECISD maintains that as part of his inspection, Daniel sent Intertek the "ETL" mark on

the LED tubes installed by Enviro-Lite and Intertek confirmed that the ETL mark on the bulbs was

fraudulent.

A non-retained expert's testimony is limited to opinions formed during the course of his or

her participation in the relevant events of the case and only to opinions which were properly dis-

closed.[92]  There is no evidence that Hamilton or Daniel participated in preparing the Intertek Re-

port and therefore they may not testify about the preparation of the Intertek Report.

Accordingly, First Class's Daubert challenge as it relates to Daniel or Hamilton's potential

testimony about preparation of the Intertek report is sustained.  Any testimony by Hamilton or

Daniel about the preparation of the Intertek Report is excluded.  Hamilton and Daniel may testify

about any involvement with Intertek during the course of their own participation in the inspection

of the elementary schools.

### 4. Whether Hamilton and Daniel's testimony that may contradict the TDLR Inspection Report should be excluded

First Class next complains that the Inspection Report makes recommendations for safety,

but that because those recommendations were not requirements, they cannot form the basis for

legal liability.[93]  First Class cites no law for this proposition.  First Class then asserts that "[t]here

is no basis for Daniel or Hamilton to attempt to come in and testify in any manner that contradicts

their TDLR Report, especially since it was rejected by the Enforcement Division."[94]  As ECISD

points out, First Class does not identify any testimony from either Daniel or Hamilton that contra-

dicts the Inspection Report.[95]

---

[91] ECF No. 298.
[92] *E.g.*, *Deeds v. Whirlpool Corp.*, No. H-15-2208, 2016 U.S. Dist. LEXIS 143374, at *24 n.9 (S.D. Tex. Oct. 17, 2016).
[93] ECF No. 286.
[94] *Id.*
[95] ECF No. 298.

As noted above, this Court's gatekeeping role is not a substitute for the adversarial process. The recommendations made in the Inspection Report do not assess liability to any party.[96]  First Class's assumption that ECISD will use the recommendations to demonstrate liability is premature.  Additionally, to the extent Hamilton or Daniel provide testimony about their personal involvement in preparing the Inspection Report, First Class will have the opportunity to cross-examine those witnesses and put on their own evidence.  Thus, First Class can address any "shaky, but admissible evidence," such as testimony that contradicts the Inspection Report, through the adversarial process of cross-examination.[97]

Accordingly, First Class's *Daubert* challenge that "[t]here is no basis for Daniel or Hamilton to attempt to come in and testify in any manner that contradicts their TDLR Report" is overruled.

### 5. Whether Daniel and Hamilton may testify on statements not in the TDLR report

First Class finally seeks to exclude any expert testimony from Hamilton and Daniel on "unsubstantiated statements not in the TDLR report."[98]  First Class fails to clearly identify what statements Daniel and Hamilton have provided that should be excluded, but this challenge  primarily relates to whether Daniel and Hamilton "have the expertise and are qualified to determine whether LED bulbs and fixtures meet the required standards" and whether LED tubes and fixtures Enviro-Lite and First Class installed could have been field certified after the fact.[99]  The Court has already ruled that Daniel and Hamilton may not testify about the preparation of the Intertek report, and as ECISD points out no testimony was provided by Daniel or Hamilton as it relates to whether

---

[96] ECF No. 286-1.
[97] *Daubert*, 509 U.S. at 596.
[98] ECF No. 286 at 10.
[99] *Id.*

the LED tubes and fixtures could have been field certified after the fact.[100] As stated previously,

Daniel and Hamilton's expert testimony will be limited to what is contained in their depositions

and reports.

Accordingly, First Class's *Daubert* challenge to "unsubstantiated statements not in the

TDLR report" is overruled.

The Court will next consider Enviro-Lite and Promlite's Daubert challenges.

### C. Enviro-Lite, LLC and USA Promlite Technology, Inc.'s *Daubert* challenges

Enviro-Lite and Promlite's notice joining First Class's *Daubert* challenge also contends

that Daniel and Hamilton should be precluded from providing any testimony:

1) Based on hearsay or speculation;
2) Regarding the cause of the damages to the four dimmer switches;
3) On issues outside their Report to the TDLR;
4) On whether the LED bulbs sent to Intertek failed to comply with industry stand-ards;
5) On any issue involving UL standards or lightbulb certifications;
6) On the meaning/interpretation of the Intertek report
7) On the interpretation or application of any industry standards relating to LED bulbs or fixtures;
8) On the City of Edinburg's construction standards, electrical standards, and per-mit application process;
9) On any issues involving causation;
10) On any issues involving causation of any damages;
11) On any issue involving damages;
12) On the reasonableness and necessity of any repairs for any alleged damages
13) On any issues regarding what the City of Edinburg did, could have done, would have done, or should have done with regard to this case;
14) On any issues regarding what the Edinburg Fire Marshall did, could have done, would have done, or should have done with regard to this case;
15) On any issues regarding what the TDLR Enforcement Division did, could have done, would have done, or should have done with regard to this case.[101]

As previously stated, a court's decision on a *Daubert* challenge should not subvert the adversarial

process.  Admissible evidence should be addressed though cross-examination and the presentation

---

[100] ECF No. 298.
[101] ECF No.

of contrary evidence.  Much of the testimony Promlite and Enviro-Lite seek to preclude can be addressed through proper objection and cross-examination at trial, and the rest has been previously ruled on supra.

Accordingly, Promlite and Enviro-Lite's objection (2) has been previously ruled on and is sustained for the same reasons discussed supra. The Inspection Report's conclusion that "[t]he electrical contractor did not follow the manufacturer's listing and labeling instructions for installation of the dimmers, clearly stating DO NOT share neutral wire, resulting in four (4) fires (contained within the switch boxes) at multiple elementary schools[,]" is excluded from evidence.  Any testimony by Jerry Daniel or Delisa Hamilton about that conclusion is likewise excluded from evidence. Objection (3) has been previously ruled on and is sustained for the same reasons discussed supra as it relates to Daniel and Hamilton's ability to offer expert testimony. Daniel and Hamilton will be allowed to provide expert testimony limited to what is contained in their depositions and reports. Objections (4), (5) (as it pertains to the Intertek report), and (6) have been previously ruled on and are sustained for the same reasons discussed supra. Any testimony by Hamilton or Daniel about the preparation of the Intertek Report is excluded.  Hamilton and Daniel may testify about any involvement with Intertek during the course of their own participation in the inspection of the elementary schools. Objections (1) and (7)-(15) are overruled but may be raised at trial.

The Court will next consider TDLR's *Daubert* challenges.

**D. Texas Department of Licensing and Regulation's limited joinder to First Class's *Daubert* challenge**

TDLR filed a limited joinder to First Class's *Daubert* challenge in which it also objects to Daniel and Hamilton being designated as experts in this case.[102]  The Court discerns four primary assertions that TDLR makes in support of its objection.  The Court will consider each in turn.

TDLR first contends that during the underlying state court litigation "[i]t was ultimately agreed that Daniel and Hamilton would be deposed, but as fact witnesses not experts."[103]  TDLR, however, does not identify who agreed that Daniel and Hamilton would only provide testimony as fact witnesses, nor is any supporting documentation attached as an exhibit to TDLR's objection nor was evidence offered at the Hearing to demonstrate such an agreement.  As such, the Court disregards this first assertion.

TDLR next contends that it "was under the impression that the parties were in agreement that Daniel and Hamilton would solely be fact witnesses in this dispute" and that "TDLR made clear to each of the parties… [that] TDLR has a firm policy against such [expert] designations."[104]  Again, no evidence was offered in support of these assertions, and even if there was, TDLR fails to articulate a legal basis for why Daniel and Hamilton's expert testimony should be precluded on this basis.  As such, it is disregarded.

TDLR next provides several policy reasons in support of its objection:

There are many policy reasons for this, including the fact that TDLR employees do not hold themselves out as "experts" (in the Daubert sense of the term). Also, TDLR reports are drafted to serve the purpose of furthering TDLR investigations, not to be introduced as evidence in litigation to support particular theories. TDLR has great concern that if its employees and reports are saddled with expert designation in litigation to which TDLR is not even a party, this would have a chilling effect on the work of TDLR inspectors and investigators. It is critically important that such inspectors and investigators make observations and draw conclusions in the course of their work, free from concerns that they will be called to a witness stand and be

---

[102] ECF No. 306
[103] *Id.* at 3.
[104] *Id.* at 3-4.

required to justify their thoughts and opinions the same as if they had been retained as a litigation expert.[105]

While the Court is sympathetic to TDLR's policy concerns, TDLR also entirely fails to provide any legal basis for why its policies are relevant in excluding testimony in this case.  As such, it is disregarded.

Last, TDLR also baldly asserts "that the equities weigh heavily against such designation."[106]  Again, TDLR provides no basis in law for this assertion and it is disregarded.

Accordingly, TDLR's *Daubert* challenges are overruled.

## IV.   CONCLUSION

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED October 20, 2022

_____
Eduardo Rodriguez
United States Bankruptcy Judge

---

[105] *Id.* at 4.
[106] *Id.*