United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 25, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 18-36893** |
| USA PROMLITE TECHNOLOGY INC, | § | |
| | § | **CHAPTER 7** |
| Debtor. | § | |
| _____ | § | |
| ENVIRO-LITE SOLUTIONS INC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 19-7003** |
| | § | |
| EDINBURG CONSOLIDATED ISD, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

The instant dispute between the parties arises out of alleged damages incurred by Edinburg Consolidated, ISD in connection with materials installed and electrical services performed at several schools within Edinburg Consolidated ISD's jurisdiction. Enviro-Lite Solutions, Inc. presented a proposal to Edinburg Consolidated ISD for a dimmable LED light retrofit of the existing fluorescent lighting troffers at various schools that would allow dimmable LED lights and dimmers to be installed. Based on the proposal, Edinburg Consolidated ISD entered into a lighting installation and management contract with Enviro-Lite Solutions, Inc. Enviro-Lite Solutions, Inc., in turn, verbally subcontracted with E-Con. Group, LLC, which in turn verbally subcontracted with First Class Electrical Services, LLC to perform work in the schools pursuant to the lighting installation and management contract. The contract included installing fixtures necessary to take advantage of new LED lighting technology and installing dimmer switches at five elementary schools. The crux of the controversy revolves around alleged damages sustained at the schools in

connection with malfunctions of the LED lights and dimmers. Because of the alleged malfunctions, litigation ensued. E-Con. Group, LLC later settled with Edinburg Consolidated, ISD and is no longer a named defendant in this proceeding. On the eve of trial, Enviro-Lite Solutions, Inc. and Edinburg Consolidated ISD also settled all claims against each other. At trial, Edinburg Consolidated ISD substantially narrowed the claims asserted against USA Promlite Technology, Inc. and First Class Electrical Services, LLC.

The Court conducted a five day trial in this adversary proceeding that commenced on January 17, 2023 and ended on January 23, 2023. As set forth more fully below, the Court finds that Edinburg Consolidated ISD's breach of contract claim against USA Promlite Technology, Inc. is denied. The Court also finds that each of Edinburg Consolidated ISD's five remaining claims against First Class Electrical Services, LLC for general negligence, gross negligence, negligence per se, negligent failure to warn or instruct, and negligent retention, supervision, and training are all denied.

## I.   BACKGROUND

### A. Procedural History

1. On December 6, 2018, USA Promlite Technology, Inc. ("*Promlite*" or "*Debtor*") filed a small-business chapter 11 petition ("*Bankruptcy Case*").[1]

2. Promlite is a Texas corporation that was engaged[2] in the business of lighting installation and management services.[3]

3. On April 12, 2019, the Court granted Promlite's motion to convert the Bankruptcy Case to one under chapter 7.[4]

---

[1] Citations to the docket in this adversary proceeding styled *Enviro-Lite Solutions, Inc. v. Edinburg Consolidated ISD* 19-7003, shall take the form "ECF No. —," while citations to the bankruptcy case, 18-36893, shall take the form "Bankr. ECF No. —."; Bankr. ECF Nos. 1, 17.

[2] *See* Bankr. ECF No. 17 (providing that Debtor had discontinued business operations).

[3] *See* Bankr. ECF No. 1.

[4] Bankr. ECF Nos. 1, 40, 44.

4. On February 11, 2019, Enviro-Lite Solutions, Inc. ("*Enviro-Lite*") and First Class Electrical Services, LLC ("*First Class*") removed a state district court action in the 370th Judicial District, Hidalgo County, Texas to this Court styled as, "C-5241-16-G, *Enviro-Lite Solutions, et al v. Edinburg Consolidated Independent School District v. USA Promlite Technology, Inc., First Class Electrical Services, LLC and E-Con Group, LLC*", thus commencing the instant adversary proceeding ("*Adversary Proceeding*").[5]

5. On November 15, 2019, Edinburg Consolidated ISD ("*ECISD*") filed its, "Edinburg CISD's Third Amended Complaint"[6] ("*ECISD's Complaint*") alleging various state law causes of action against Promlite and Enviro-Lite for (1) breach of contract, (2) breach of express warranty, (3) breach of implied warranty of merchantability, (4) breach of implied warranty of fitness, (5) breach of implied warranty of good and workmanlike services, (6) negligent misrepresentation and fraud, and against Promlite, Enviro-Lite, and First Class for (7) general negligence, (8) negligent failure to warn or instruct, (9) negligent failure to recall, (10) negligent retention, supervision, and training, (11) products liability, (12) gross negligence, and against Promlite, Enviro-Lite, First Class, and E-Con Group, LLC ("*E-Con*") for (13) negligence per se and (14) violations of §§ 17.46(b)(1)-(7), (14), (24) of the Texas Business and Commerce Code.[7]

6. Also on November 15, 2019, Enviro-Lite filed its, "Plaintiff & Counter-Defendant Enviro-Lite Solutions, LLC's Fourth Amended Complaint"[8] ("*Enviro-Lite's Complaint*") alleging various state law causes of action against ECISD for (1) breach of contract, (2) promissory estoppel, (3) negligent misrepresentation, (4) common law fraud, (5) and declaratory relief.[9]

7. On December 17, 2019, five documents were filed with this Court:

   a. Enviro-Lite filed its, "Counter-Defendant Enviro-Lite Solutions, LLC's Answer to Counterclaimant ECISD's Third Amended Complaint (DOC. #78) & Counterclaim for Indemnity"[10] ("*Enviro-Lite's Answer*") asserting a counterclaim against ECISD under § 17.555 of the Texas Business & Commerce Code.

   b. ECISD filed its, "Edinburg CISD's Answer to Enviro-Lite Solutions, LLC's Fourth Amended Complaint"[11] ("*ECISD's Answer*").

   c. First Class filed its, "First Class Electrical Services, LLC's Answer to Edinburg CISD's Third Amended Complaint (DOC #78) and Counterclaim for Indemnity Pursuant to the DTPA"[12] ("*First Class's Answer*") asserting a counterclaim against ECISD under § 17.555 of the Texas Business & Commerce Code.

---

[5] ECF No. 1.
[6] ECF No. 78.
[7] *Id.*
[8] ECF No. 77.
[9] *Id.*
[10] ECF No. 83.
[11] ECF No. 84.
[12] ECF No. 85.

    **d.** E-Con filed its, "E-Con Group, LLC's Answer to Edinburg CISD's Third Amended Complaint (DOC #78) and Counterclaim Against Edinburg CISD"[13] ("*E-Con's Answer*") asserting a counterclaim against ECISD under § 17.555 of the Texas Business & Commerce Code.

    **e.** Promlite filed its, "Debtor and Third-Party Defendant USA Promlite Technology, Inc.'s Answer to Counterclaimant ECISD's Third Amended Complaint (DOC. #78) & Counterclaim for Indemnity"[14] ("*Promlite's Answer*") asserting a counterclaim against ECISD under § 17.555 of the Texas Business & Commerce Code.

8. On July 30, 2020, this Court entered an order ("*Summary Judgment Order*") that, inter alia, granted ECISD's motion for summary judgment as to liability on its breach of contract claim against Enviro-Lite with damages still to be determined at trial.[15]

9. On September 29, 2021, E-Con and ECISD released all claims against each other in this Adversary Proceeding pursuant to a certain settlement agreement ("*E-Con Settlement*")[16] and this Court entered an order on September 30, 2021, dismissing E-Con from this Adversary Proceeding.[17]

10. On November 19, 2021, ECISD, Promlite, Enviro-Lite, and First Class filed their, "Joint Pretrial Order"[18] ("*Joint Pre-Trial Stipulation*") detailing various agreed and disputed issues of law and fact in this Adversary Proceeding.

11. On January 17, 2023, Enviro-Lite and ECISD jointly announced on the record that a settlement agreement had been reached that would release all claims between Enviro-Lite and ECISD in this Adversary Proceeding ("*Enviro-Lite Settlement*").[19]

12. On January 17, 2023, ECISD filed its, "Defendant and Counterclaimant ECISD's Notice of Stipulations"[20] ("*January 17, 2023 Stipulation*") that provided certain agreed stipulations between Promlite and ECISD concerning ratification as it pertains to ECISD's breach of contract claim against Promlite.  ECISD initially refers to their claim against Promlite as a "ratification claim" but counsel for ECISD later clarifies on the record that it is referring to ECISD's breach of contract claim ("*January 19, 2023 Claim Clarification*").[21]  Promlite and ECISD further stipulated in the January 17 Stipulation that damages would be $10,000 if ECISD is successful on its breach of contract claim.[22]  Also on January 17, 2023, counsel for ECISD stipulated on the record that this Court was not to consider any evidence presented at trial in determining ECISD's breach of contract claim against Promlite, and that

---

[13] ECF No. 86.
[14] ECF No. 87.
[15] ECF No. 143 at 9, ¶ 11. *See also* ECF No. 142 at 39-44.
[16] ECF No. 199.
[17] ECF No. 203.
[18] ECF No. 246.
[19] ECF No. 374 at 5, ¶¶ 2-10; 8, ¶¶ 20-23; 12, ¶¶ 20-24 – 13, ¶ 10.
[20] ECF No. 354.
[21] See ECF No. 376 at 4, ¶¶ 19-24.
[22] ECF No. 354.

the Court should only consider the stipulations in the Joint Pre-Trial Stipulation and the January 17 Stipulation ("*January 17, 2023 Oral Stipulation*").[23]  On January 20, 2023, ECISD filed, pursuant to this Court's request for clarification, its, "Defendant and Counter-claimant ECISD and Debtor Promlite's Notice of Stipulations"[24] ("*January 20, 2023 Stipulation*" and together with the January 17, 2023 Stipulation, January 19, 2023 Claim Clarification, and the January 17, 2023 Oral Stipulation, the "*Promlite Stipulation*") clarifying that Promlite and ECISD were abandoning all claims against each other except for ECISD's breach of contract claim against Promlite based on ratification.

13. This Court conducted a five day trial commencing on January 17, 2023, and concluding on January 23, 2023.

14. On January 20, 2023, this Court ordered First Class and ECISD to submit post-trial briefing in lieu of closing arguments due no later than March 1, 2023.[25]  On January 25, 2023, this Court extended the post-trial briefing deadline to April 15, 2023.[26]

15. On April 15, 2023, First Class filed its, "First Class' Post Trial Brief"[27] ("*First Class' Post-Trial Brief*").

16. Also on April 15, 2023, ECISD filed its, "ECISD's Closing Argument"[28] ("*ECISD's Post-Trial Brief*").

## B. Findings of Fact

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, incorporating Federal Rules of Civil Procedure 52 and 9014. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion

---

[23] ECF No. 374 at 14, ¶ 24 – 15, ¶ 3 ("[By Mr. Campbell:] [s]o, for all of the evidence at trial, we've agreed that we're not relying on any additional evidence that is adduced at trial for our claims against Promlite. We are relying on what's previously been stipulated to the Court and what we just read into the record"; 15, ¶¶ 13 – 16, ¶ 2 ([By Mr. Campbell:] "[b]ut I think the critical thing for Promlite is that -- and for the Court to know is that we're not relying on anything during trial for our ratification claim against Promlite.").

[24] ECF No. 359.

[25] January 20, 2023, Courtroom Minutes.

[26] ECF No. 369.

[27] ECF No. 382.

[28] ECF No. 383.

controls. For the purposes of this Memorandum Opinion, and to the extent not inconsistent here-

with, this Court also adopts and incorporates by reference each of the Backgrounds Facts in this

Court's October 16, 2019,[29] July 30, 2020,[30] September 9, 2020,[31] May 17, 2021,[32] and October

20, 2022[33] Memorandum Opinions.

1. On March 16, 2015, ECISD requested a quote from Enviro-Lite for an "LED retrofit pro-
   ject" at Cavazos, Escandon, Eisenhower, Zavala, Truman, and Monte Cristo Elementary
   Schools ("*Schools*").[34] Enviro-lite provided a quote for the six schools.[35]

2. On May 6, 2015, work at Cavazos Elementary School started.[36]

3. In August 2015, Enviro-Lite sent Promlite copies of purchase orders and unsigned copy of
   the contract with ECISD.[37]

4. In 2015, Promlite received payments totaling approximately $49,000 from Enviro-Lite,
   which reflected approximately 5% of the purchase orders for the six schools ("*BuyBoard
   payment*").[38]

5. Promlite did not supply any bulbs, fixtures, or products.[39]

6. Promlite kept the money it received in these payments.[40]

7. On June 18, 2015, ECISD's superintendent, Dr. Mario Salinas ("*Salinas*"), executed the
   Lighting Installation and Management Contract with Enviro-Lite regarding Escandon, Ei-
   senhower, Zavala, Truman, and Monte Cristo Elementary Schools ("*Contract*") after it was
   approved by his staff and legal counsel.[41]

8. The agreement between Enviro-Lite and ECISD regarding the installation of LED lighting
   at Cavazos is identical to the written contract for the other five elementary schools.[42]

---

[29] ECF No. 71.
[30] ECF No. 142.
[31] ECF No. 154.
[32] ECF No. 182.
[33] ECF No. 326.
[34] ECF No. 246 at 3, ¶ 2.
[35] *Id.*
[36] *Id.*, ¶ 4.
[37] ECF No. 354.
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] ECF No. 246 at 3, ¶ 5.
[42] *Id.*, ¶ 6.

9. Enviro-Lite subcontracted the work to E-Con for all six schools, which subcontracted the work to First Class for all six schools.[43]

10. There was no written contract with E-Con or First Class; E-Con verbally told First Class to "change the bulbs, bulb for bulb, and add some dimmer switches and occupancy sensors, and remove some ceiling tiles."[44] This included changing out a toggle switch with a dimmer switch, and modifying the existing fixture so that an LED bulb could be utilized, and adding a wire to add a sensor so the light would automatically come on.[45] E-Con did not direct First Class to perform work on the internal existing wiring.[46] First Class was not directed to re-wire the entire schools, or to go in and do a complete analysis of the electrical systems in the schools.[47] E-Con did not expect First Class to perform an evaluation of the school system.[48]

11. The City of Edinburg followed the 2008 National Electric Code ("*NEC*").[49]

12. Promlite did not authorize John Phillips ("*Phillips*") to sign the Contract and he was not otherwise acting for Promlite.[50] Promlite products were not used at any of the elementary schools, and Promlite did not perform any of the work at the elementary schools.[51]

13. Promlite had no knowledge of any executed agreements with ECISD regarding the installation of the dimmable LED lighting systems at the six elementary schools until after this litigation began.[52] Moreover, Promlite never saw the written contract executed in June 2015 until after this lawsuit began.[53]

14. After becoming aware of the compatibility issue, ECISD hired SigmaHN Engineers, PLLC ("*Sigma*").[54] Sigma was hired to come up with recommendations regarding "things that needed to be repaired" and "a procedure of how they wanted things to be done" in order to "make sure the school's electrical components were safe."[55]

15. On February 11, 2016, Sigma issued a Lighting Assessment Report ("*Sigma Report*") with its recommendations and observations.[56]

---

[43] *Id.* at 4, ¶ 8.
[44] *Id.*, ¶ 9.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*, ¶ 10.
[50] *Id.*, ¶ 11.
[51] *Id.*
[52] ECF No. 354.
[53] *Id.*
[54] ECF No. 246 at 4, ¶ 12.
[55] *Id.*
[56] *Id.*, ¶ 13.

16. On March 3-4, 2016, Tony Nicanor ("*Nicanor*") advised Carlos Lima ("*Lima*"), who advised Phillips that unofficial approval had been obtained to install dimmers, and requested Enviro-Lite to prepare and plan for dimmer installation.[57]

17. On May 9, 2016, Lima was asked if he was "satisfied with the results we have now." He responded: "We got to the point that we were able to resolve all of the obstacles to the point that we have 100 percent functionality with the LED lights on the six schools."[58]  Lima further stated: "Based on the initial reports, and based on what was currently installed, we've been able to resolve all the issues for those six schools."[59]

18. On June 6, 2016, Lima instructed the ECISD electricians to remove the dimmer switches and replace with toggle switches in Zavala.[60]

19. In June 2016, there were several meetings involving ECISD and Envirolite to decide how to implement Sigma's recommendations.[61]

20. Lima confirmed that the June 27 memorandum set forth who was going to do what work.[62]

21. The dimmers and bulbs for the project were provided to First Class by Envirolite.[63]

22. After First Class finished installing the first set of dimmers, flickering issues began at some of the schools.[64]

23. After First Class installed the second set of dimmers the flickering issues at the Schools were resolved.[65]

24. Escandon had a history of power outages at the school.[66]

25. First Class did not obtain a permit prior to the work performed in 2015 at the six schools.[67]

26. As a master electrician, Mr. Huerta did not read the installation instructions for the dimmers before performing this work in 2015.[68]

27. In May of 2016, a light bulb burned/melted at Truman ("*Melted Bulb Incident*").[69]

---

[57] *Id.*, ¶ 15.
[58] *Id.* at 5, ¶ 16.
[59] *Id.*
[60] *Id.*, ¶ 17.
[61] *Id.*, ¶ 18.
[62] *Id.*, ¶ 19.
[63] ECF No. 376 at 38, 126, 127.
[64] *See generally* ECF No. 374.
[65] ECF No. 378 at 17.
[66] ECF No. 374 at 70.
[67] ECF No. 375 at 73, ¶¶ 18-20.
[68] ECF No. 375 at 74-75.
[69] ECF No. 374 at 68-69.

28. On September 13, 2016, Jerry Daniel ("*Daniel*"), Chief Electrical Inspector for TDLR, compiled a TDLR Inspection Report in which he noted that he had discovered that the ETL markings on Envirolite's LED tubes appeared to be fraudulent.[70]

29. On September 23, 2016, Intertek issued a public notice regarding the unauthorized ETL certification mark on the "Enviro-Light Solutions Branded Self-ballasted LED Tube Models" that had been installed at the Schools.[71]  The notice stated that "it is not known if they comply with any safety requirements" and recommended: "Products should not be used and returned to the point of purchase."[72]

30. On September 23, 2016, Salinas confirmed that ECISD had instituted a fire watch, taped the wiring associated with the dimmer switches and submitted to an inspection by the City Code Inspector, and was in the process of obtaining electrical design packages for the six elementary schools.[73]  Design packages for the six elementary schools were prepared by Sigma and DBR Engineering Consultants ("*DBR*").[74]

31. On October 11, 2016, ECISD adopted a resolution to replace the lighting systems at the Schools.[75]

32. First Class installed the first and second set of dimmers in the Schools in contravention of the manufacturers' instructions.[76]

33. The dimmable LED lights Envirolite and First Class installed contained fraudulent ETL markings and numbers, deceptively indicating the LED lights had been certified by Intertek when they were not.[77]

34. All of the dimmable LED light tubes had to be removed and replaced because they were not certified as being available or being appropriate for installation in electrical projects in the United States.[78]

35. The UL listing on the electrical fixtures in the schools was automatically voided when the non-listed, fraudulently marked bulbs were put in.[79]  Replacement of the fixtures is cheaper than recertification.[80]

---

[70] ECF Nos. 262-33, 377 at 46-47, 55.
[71] ECF No. 262-27.
[72] *Id.*
[73] ECF No. 262-26.
[74] ECF Nos. 262-47-53.
[75] ECF No. 262-34.
[76] *See generally* ECF No. 375.
[77] ECF Nos. 262-33; 377 at 46-47, 55-57.
[78] ECF No. 262-32, 33.
[79] ECF No. 377 at 55.
[80] *Id.* 55, 70, 83.

36. On May 31, 2016, there were electrical events at Escandon and Cavazos that caused damage to four of the dimmer switches and some of the electrical wiring (together with the Melted Bulb Incident, "*Melting Incidents*").[81]

## II.   CREDIBILITY OF WITNESSES

It is the Court's duty to assess and weigh the credibility of witnesses.[82]  At the January 17-23, 2023 trial, the Court heard testimony from nine witnesses: (1) Dr. Mario Salinas, (2) John Phillips, (3) Elpidio Huerta, Jr., (4) Dr. Bill Hamilton, (5) Jerry Daniel, (6) Edward Puentas, (7) Carlos Lima, (8) Natalie Velasquez, (9) and Jose Antonio Nicanor After observing the witnesses and listening to their testimony, the Court makes the following observations regarding the credibility of the witnesses, as set forth below.

### 1. Dr. Mario Salinas

Dr. Mario Salinas is currently the superintendent of the Edinburg Consolidated ISD.[83]  At trial, Dr. Mario Salinas responded to questions clearly, completely, and directly.[84]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 2. John Phillips

John Phillips formerly owned the now defunct Enviro-Lite Solutions, LLC.[85]  At trial, John Phillips responded to questions clearly, completely, and directly.[86]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 3. Elpidio Huerta, Jr.

---

[81] ECF Nos. 374 at 69-70; 377 at 64; 262-24.
[82] *In re Burg*, 641 B.R. 120, 128 (Bankr. S.D. Tex. 2022) (citing *Port Arthur Towing Co. v. John W. Towing, Inc. (In re Complaint of Port Arthur Towing Co.)*, 42 F.3d 312, 318 (5th Cir. 1995)).
[83] ECF No. 374 at 27, ¶¶ 8-9.
[84] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).
[85] ECF No. 375 at 6.
[86] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).

Elpidio Huerta, Jr. is a master electrician and owner of First Class Electrical Services, LLC.[87] At trial, Elpidio Huerta, Jr. was evasive and frequently refused to directly answer straight forward questions.  One such example is as follows:

> Q: All right, when you installed the second set of dimmers, you were aware of the shared neutral issue, correct?
> A: I was aware that the school was going to repair them, yes, for us to install the dimmers.
> MR. CAMPBELL: Objection, non-responsive.
> THE COURT: Sustained.[88]

Much of Huerta's testimony played out in a similar fashion, and in the span of little more than an hour of testimony this Court sustained three non-responsive objections.[89]  Even when not objected to, much of Huerta's testimony was evasive.[90]   As discussed in greater detail infra, Huerta also gave conflicting and unsupported opinions regarding whether the manufacturer's instructions were recommendations or requirements that casts doubt on his credibility.[91]  Thus, the Court finds that he is not a very credible witness and gives little weight to his testimony.

### 4. Dr. Bill Hamilton

Dr. Bill Hamilton is an electrical engineer retained by ECISD as an expert witness in this case.[92]  At trial, Dr. Bill Hamilton responded to questions clearly, completely, and directly.[93]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 5. Jerry Daniel

---

[87] ECF No. 375 at 65.
[88] *Id.* at 80.
[89] *Id.* at 80, 83, 88.
[90] *See generally id.* at 64-116.
[91] *Id.* at  71.
[92] ECF No. 262 at 2-4; ECF No. 376 at 76.
[93] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).

Jerry Daniel is the Chief Electrical Inspector for the Texas Department of Licensing and Regulation.[94]  At trial, Jerry Daniel responded to questions clearly, completely, and directly.[95] Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 6. Edward Puentes

Edward Puentas works for DBR Engineering and performed engineering services at some of ECISD's schools.[96]  At trial, Edward Puentes responded to questions clearly, completely, and directly.[97]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 7. Carlos Lima

Carlos Lima was employed by ECISD as a mechanical, electrical, and plumbing school district engineer during the 2015-2016 period relevant to this litigation.[98]  At trial, Carlos Lima responded to questions clearly, completely, and directly.[99]  Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### 8. Natalie Velasquez

Natalie Velasquez is the building official for the City of Edinburg.[100] At trial, Natalie Velasquez responded to questions clearly, completely, and directly.[101]  Thus, the Court finds that she is a very credible witness and gives substantial weight to her testimony.

### 9. Jose Antonio Nicanor

---

[94] ECF No. 377 at 18.
[95] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).
[96] ECF No. 377 at 78.
[97] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).
[98] ECF No. 378 at 5-6.
[99] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).
[100] ECF No. 378 at 64-65.
[101] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).

Jose Antonio Nicanor is employed by SigmaHN Engineers, PLLC, and was substantially involved in identifying and recommending solutions to various lighting issues disputed in this lawsuit.[102]   At trial, Jose Antonio Nicanor responded to questions clearly, completely, and directly.[103]   Thus, the Court finds that he is a very credible witness and gives substantial weight to his testimony.

### III.   JURISDICTION, VENUE, AND CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[104]

"Arising under" jurisdiction requires that the proceeding "invoke a substantive right provided by [the Bankruptcy Code]."[105]   "Arising in" jurisdiction refers to proceedings that are not based on any provision of the Bankruptcy Code, but nonetheless "would have no existence outside of the bankruptcy."[106]   Taken together, proceedings that are "arising under" or "arising in" bankruptcy comprise this Court's core jurisdiction.[107]   This Court may also exercise jurisdiction over proceedings that "relate to" a case under the Bankruptcy Code.[108]   A proceeding is "related to" a case under the Bankruptcy Code "when the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[109]   In other words, "if the outcome

---

[102] ECF No. 378 at 101-102.
[103] *See, e.g., In re Burg*, 641 B.R. at 129 (citations omitted).
[104] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[105] *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techs., Inc.)*, 430 F.3d 260, 267 (5th Cir. 2005).
[106] *Matter of Wood,* 825 F.2d 90, 97 (5th Cir. 1987).
[107] *Id.*
[108] 11 U.S.C. § 157(c)(1); 28 U.S.C. § 1334(b).
[109] *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995) (alteration in original) (citations omitted).

could alter the debtor's rights, liabilities, options, or freedom of action (either positively or nega-tively) and which in any way impacts upon the handling and administration of the bankrupt es-tate."[110]  The existence of subject matter jurisdiction is determined at the time of removal."[111]  "If 'related to' jurisdiction exists at the time of removal subsequent events 'cannot divest the district court of that subject matter jurisdiction.'"[112]

Here, the causes of action asserted[113] in this Adversary Proceeding at the time of removal arise under Texas state law and do not invoke substantive rights provided by the Bankruptcy Code nor do they arise only in the context of bankruptcy.  Were it not for Promlite's bankruptcy, these claims could have been adjudicated in state court.  However, "[w]hether a pre-petition state law claim constitutes either a core or non-core proceeding depends upon (1) whether the creditor filed a proof of claim with the bankruptcy court and (2) the relationship between the state action and proof of claim."[114]  "Where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C. § 157(b)(2)(B)."[115]  Because ECISD's state law causes of action are asserted as the basis of their claims against the estate,[116] this is a core proceeding and thus, this Court has constitutional authority to enter a final judgment.

---

[110] *Id.* (citing *In re Majestic Energy Corp.*, 835 F.2d 87, 90 (5th Cir. 1988)). *See also, e.g.*, *Edge Petroleum Operating Co. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)*, 483 F.3d 292, 298 (5th Cir. 2007); *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (holding that "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simply proceedings involving the property of the debtor or the estate.").
[111] *In re Bissonnet Invs. LLC*, 320 F.3d 520, 525 (5th Cir. 2003).
[112] *In re Enron Corp. Sec.*, 535 F.3d 325, 336 (5th Cir. 2008) (citing *In re Celotex Corp.*, 124 F.3d 619 (4th Cir. 1997)).
[113] *See* ECF Nos. 77, 78, 83, 85, 86, 87.
[114] *Barbknecht Firm, P.C. v. Keese (In re Keese)*, No. 18-40817, 2021 WL 811572, at *18, 2021 Bankr. LEXIS 478, at *54 (Bankr. E.D. Tex. Feb. 28, 2021) (quoting *Ramco, Inc. v. Charles Guy Evans & Sons, Inc. (In re Charles Evans Trucking Inc.)*, 595 B.R. 715, 722-23 (Bankr. S.D. Miss. 2018)).
[115] *In re Charles Evans Trucking Inc.*, 595 B.R. at 723 (quoting *In re Best Reception Sys.*, 220 B.R. 932, 944-45 (Bankr. E.D. Tenn. 1998) (collecting cases including *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97-97 (5th Cir. 1987))).
[116] Bankr. ECF No. 57.

Alternatively, this Court has related to jurisdiction over this matter.  Promlite is the debtor in the underlying Chapter 7 bankruptcy case.[117] The outcome of this adversary proceeding could conceivably impact the administration of Promlite's bankruptcy case because if ECISD prevails on its claims against Promlite, it would result in additional liability against the estate that could substantially alter the distributions to creditors in the underlying Chapter 7.  As such, the Court holds jurisdiction pursuant to 28 U.S.C. § 1334(b) and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012-6.[118]

This Court may only hear a case in which venue is proper.[119]  Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."  Debtor's main chapter 7 case is presently pending in this Court and therefore, venue of this adversary proceeding is proper.  Additionally, the causes of action (and other relief) asserted herein concern a construction project that took place at six (6) different schools located in Hidalgo County, Texas.[120]  The projects were performed in Hidalgo County, Texas, and virtually all of the Parties associated with this claim are located in or perform work in Hidalgo County, Texas.[121]

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[122]  As discussed, the pending dispute before this Court is a core proceeding.  Thus, this Court has constitutional authority to enter a final judgment.[123]  This Court also has constitutional authority to enter a final

---

[117] Case No. 18-36893.
[118] *In re: Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[119] 28 U.S.C. § 1408.
[120] *See* ECF Nos. 77, 78, 83, 85, 86, 87.
[121] *See* ECF Nos. 77, 78, 83, 85, 86, 87.
[122] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1938–40, 191 L.Ed.2d 911 (2015).
[123] 11 U.S.C. § 157(b).

order because all parties in interest have consented to the entry of final orders by this Court.[124]

Regarding any non-core claims involved, this Court finds that resolution of such claims is inextri-

cably intertwined with resolution of the core claims as of the date of removal.[125]  Furthermore, all

parties have consented to a bench trial before this Court.[126]  However, should the Honorable United

States District Court determine that the Bankruptcy Court did not have authority to enter final

orders and judgments, this Court requests that the Honorable United States District Court convert

this Memorandum Opinion into a Report and Recommendation.

## IV.    ANALYSIS

As a result of the E-Con Settlement,[127] the Enviro-Lite Settlement,[128] the Promlite Stipula-

tion,[129] certain stipulations in the Joint Pre-Trial Order,[130] the Summary Judgment Order,[131] and

certain representations made by ECISD's counsel at trial,[132] many of the claims and counterclaims

---

[124] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . ."). *See also* ECF No. 2 (E-Con Group, LLC), ECF No. 3 (Enviro-Lite Solutions, Inc.), ECF No. 4 (First Class Electrical, LLC); ECF No. 82 (Edinburg Consolidated Independent School District; ECF No. 87 (USA Promlite Technology, Inc.)

[125] *E.g.*, *In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract-law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law); *Honigman, Miller, Schwartz & Cohn v. Weitzman* (*In re DeLorean Motor Co.*), 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that an otherwise non–core state law claim was inextricably tied to the determination of an administrative claim against the estate and similarly tied to questions concerning the proper administration of the estate); *Maitland v. Mitchell* (*In re Harris Pine Mills*), 44 F.3d 1431, 1438 (9th Cir. 1995) (citing *Honigman, Miller, Schwartz & Cohn* with approval); *see also CDX Liquidating Trust v. Venrock Assoc.*, No. 04-7236, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) (holding that where non–core claims were inextricably intertwined with core claims, the non–core claims should be treated as core claims); *Electric Machinery Enterprises, Inc. v. Hunt Construction Group, Inc.* (*In re Electric Machinery Enterprises, Inc.*), 416 B.R. 801, 866–67 (Bankr. M.D. Fla. 2009) (adopting inextricably intertwined approach).

[126] ECF No. 75.

[127] ECF Nos. 199; 203.

[128] ECF No. 374 at 5, ¶¶ 2-10; 8, ¶¶ 20-23; 12, ¶¶ 20-24 – 13, ¶ 10.

[129] ECF No. 354; ECF No. 376 at 4, ¶¶ 19-24; ECF No. 374 at 14, ¶ 24 – 15, ¶ 3.

[130] ECF No. 246 at 8, 42 (ECISD withdrew its claim for implied warranty as against Promlite; ECISD withdrew its claim for implied warranty as against Promlite; ECISD withdrew its claim for implied warranty as against Promlite; ECISD withdrew its claim for product liability as to all Defendants; ECISD withdrew its DTPA claims against First Class and Promlite).

[131] ECF No. 143 at 9, ¶ 11(Order granting ECISD's Motion For Partial Summary Judgment for its breach of contract claim against Enviro-Lite as to liability only.  ECISD's damages, if any remain for trial).

[132] *See* ECF No. 377 at 8-11 (ECISD clarifies that it is abandoning its claims for negligent failure to recall and negligent

originally asserted in this Adversary Proceeding have been resolved.  There are six remaining

claims for this Court to consider: (A) ECISD's breach of contract claim against Promlite, and five

claims asserted by ECISD against First Class for (B) general negligence, (C) gross negligence, (D)

negligence per se, (E) negligent failure to warn or instruct, and (F) negligent retention, supervision,

and training.[133]  The Court will consider each in turn.

## A. ECISD's breach of contract claim against Promlite

ECISD asserts a single claim against Promlite for breach of contract via ratification.[134]

ECISD contends that while Promlite was not a named party to the Contract, it nonetheless ratified

the contract under Texas law, and thus is liable for Enviro-Lite's breach of the Contract.[135]

Under the theory of ratification, a principal can be held vicariously liable for the acts of its

agent that are outside the scope of the agent's authority if the principal adopts or confirms those

acts.[136]  Promlite and ECISD assert competing legal standards as to what constitutes an adoption

or confirmation of an agent's unauthorized acts under Texas law.[137]  Citing *Motel Enterprises, Inc.

v. Nobani*, Promlite contends "that it did not and could not have 'ratified' the contract between

ECISD and Enviro-Lite because Promlite did not know about the contract until long after it was

executed and litigation had begun."[138]  Conversely, ECISD contends, citing the Fifth Circuit's

decision in *Penton v. Am. Bankers Ins. Co. of Fla.*, that, "Promlite ratified the contract by retaining

the benefits of the transaction after becoming aware of the unauthorized conduct."[139]

---

misrepresentation or fraud against First Class).

[133] ECF No. 78.

[134] ECF Nos. 78, 354, 359.

[135] *Id.*

[136] *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 536–37 (Tex. 2002).

[137] *See* ECF No. 354.

[138] ECF No. 354 at 2 (citing 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

[139] *Id.* (citing 114 F. App'x 622, 625 (5th Cir. 2004) (Under Texas law, "ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge.") (quoting *Land Title Co. of Dall., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 745, 756 (Tex. 1980)).

As a preliminary matter, this Court notes that it has already ruled that Enviro-Lite was liable to ECISD for breaching the Contract.[140]  Promlite and ECISD have further stipulated that if Promlite is liable to ECISD for Enviro-Lite's breach of contract, that damages will be $10,000.[141]  The Court need only determine (1) if an agency relationship exists between Promlite and Enviro-Lite, and (2) if there is an agency relationship, if Promlite's conduct, as stipulated, constitutes ratification under Texas law.  Pursuant to the Promlite Stipulation, this Court will only consider the stipulations in the January 17, 2023 Stipulation and the Joint Pre-Trial Stipulation and will not rely on any facts or evidence introduced at trial.[142]

Although neither Promlite nor ECISD expressly address this issue in the Promlite Stipulation, the Court first notes that ratification under Texas law requires that there be an underlying agency relationship between the principal and agent.[143]  Pursuant to the Promlite Stipulation, this Court is bound to considering only a limited number of stipulated facts in assessing whether an agency relationship exists.[144]  Under Texas law, "agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal, subject to the principal's control."[145]  "The essential element in determining agency relationship is the principal's right to control the agent."[146]

---

[140] *See* ECF No. 143 at 9, ¶ 11.

[141] ECF No. 354.

[142] ECF Nos. 246 & 354.

[143] *See Willis v. Donnelly*, 199 S.W.3d 262, 273 (Tex. 2006) ("[r]atification, however, presupposes that the principal has an agent who, by agreement, is authorized to act on the principal's behalf.); *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753659, at *2 (N.D. Tex. Jan. 22, 2015) (finding that ratification under Texas law requires that an agency relationship exist).

[144] ECF No. 374 at 14, ¶ 24 – 15, ¶ 3 ("[By Mr. Campbell:] [s]o, for all of the evidence at trial, we've agreed that we're not relying on any additional evidence that is adduced at trial for our claims against Promlite. We are relying on what's previously been stipulated to the Court and what we just read into the record"; 15, ¶¶ 13 – 16, ¶ 2 ([By Mr. Campbell:] "[b]ut I think the critical thing for Promlite is that -- and for the Court to know is that we're not relying on anything during trial for our ratification claim against Promlite.").

[145] *Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*, 258 F.3d 345, 351 (5th Cir. 2001).

[146] *Id.*

The facts that are stipulated to in the January 17, 2023 Stipulation presuppose that there is an agency relationship, but the parties fail to actually stipulate that Promlite is Enviro-Lite's principal.[147]   The parties also fail to stipulate to any facts showing that Enviro-Lite was generally authorized to act for Promlite and that Promlite had a right to control Enviro-Lite.[148]   Similarly, there are no stipulations in the Joint Pre-Trial Statement that would allow this Court to conclude that Promlite is Enviro-Lite's principal.[149]   In fact, there is a disputed issue of fact in the Joint Pre-Trial Stipulation suggesting that agency would have been disputed were this claim litigated at trial.[150]   It is also noteworthy that ECISD was fully aware that establishing an agency relationship is a necessary element of proving ratification.[151]   Establishing an agency relationship under Texas law is not a trivial inquiry that this Court can ignore in assessing ratification, and ECISD fails to provide anything in the Promlite Stipulation that this Court could use to find that an agency relationship exists under Texas law.

As such, because this Court has concluded that ECISD failed to carry its burden to establish that there was an agency relationship between Promlite and Enviro-Lite under Texas law, the Court need not consider whether Promlite's actions, as stipulated, constituted ratification of the Contract.

Accordingly, ECISD's breach of contract claim against Promlite is denied.

## B. ECISD's claims against First Class

### 1. General negligence

First, ECISD asserts that First Class is liable for damages incurred while performing work at the Schools under a theory of common law negligence.[152]

---

[147] *See* ECF No. 354.
[148] *See* ECF Nos. 246, 354.
[149] *See* ECF No. 246.
[150] See id. at 17, ¶ 31.
[151] *See id.* at 40-41, 46.
[152] ECF No. 78.

Under Texas law, a cause of action based upon negligence requires a plaintiff to prove: (a) defendant owed a legal duty to plaintiff, (b) defendant breached that duty; and (c) injury proximately caused by defendant's breach.[153]  The Court will consider each in turn.

### a.  Duty

The threshold inquiry turns to the existence of duty.[154]  In the absence of a duty, there can be no negligence liability.[155]  Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expedience, and faithfulness.[156]  Additionally, a contract for professional services gives rise to a duty by the professional to exercise the degree of care, skill, and competence that reasonably competent members of the profession would exercise under similar circumstances.[157]  A professional must use the skill and care in the performance of their duties commensurate with the requirements of their profession, and are only liable for a failure to exercise reasonable care and skill commensurate with those requirements.[158]  The Texas Administrative Code sets the standards of conduct for electricians engaged in electrical work.[159]  It states that the licensee is obligated to exercise reasonable judgment and skill in the performance of his duties and work as a licensee.[160]

To determine the duty First Class owed to ECISD, the Court turns to the Contract.  The scope of work defined within addendum A of the Contract states that "Enviro-Lite will perform a full retrofit and or replacement of all existing lighting into LED light technology in the following

---

[153] *See F.D.I.C. v. Ernst & Young*, 967 F.2d 166, 170 (5th Cir. 1992).
[154] *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).
[155] *Id.*
[156] *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991).
[157] *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 594 (Tex.App.–Fort Worth 2008, pet. denied).
[158] *Id.*
[159] *See* 16 Tex. Admin. Code § 73.60(a).
[160] *Id.*

schools: Eisenhower, Escandon, Monte Cristo, Truman, and Zavala."[161]  This was signed on June 18, 2015.[162]  Enviro-Lite then verbally contracted with E-Con who in turn verbally subcontracted with First Class to "change the bulbs, bulb for bulb, and add some dimmer switches and occupancy sensors, and remove some ceiling tiles."[163]  This included changing out a toggle switch with a dimmer switch, and modifying the existing fixture so that an LED bulb could be utilized, and adding a wire to add a sensor so the light would automatically come on.[164]  The Court notes that it is undisputed that First Class was subcontracted to perform work at the Schools.[165]  Further, Huerta at all times discussed was a licensed master electrician.[166]

As such, the Court finds that First Classes' work with Enviro-Lite and E-Con encompassed the duties to perform the project with exercise the degree of care, skill, and competence that reasonably competent master electricians would exercise under similar circumstances, and to exercise reasonable judgment and skill in the performance of the work.  Thus, First Class owed ECISD a legal duty to perform its work at the Schools with the degree of care, skill, and competence that a master electrician would use under similar circumstances.

### b.  Breach

The Court next considers if First Class breached its duty of care to ECISD.  Based on the evidence presented at trial, the Court identifies three separate actions that constitute a breach of duty by First Class: (i) Huerta's installation of the first set of dimmers on the shared neutrals in contravention of the manufacturer's instructions, (ii) Huerta's failure to ensure that the shared neutral issue was resolved prior to installing the second set of dimmers in the Schools, and (iii)

---

[161] ECF No. 195-1.
[162] *Id.*
[163] ECF No. 246 at 4.
[164] *Id.*
[165] ECF No. 375.
[166] *Id.*

Huerta's failure to obtain the requisite permits to perform his work at the Schools.  The Court will discuss each in turn.

### i.  Failure to adhere to the manufacturer's instructions

At trial, both Hamilton and Daniel provided expert testimony that no prudent master electrician would fail to read and adhere to a manufacturer's installation instructions of electrical devices, including the dimmers in question here.[167]  The  manufacturer's instructions accompanying the first set of dimmers installed by Huerta in the Schools provides, inter alia, "to avoid flickering, flashing or lights on a device adjusting when another device's level is changed, *do not* share neutrals" ("*Instruction*").[168]  Huerta acknowledges that he did not read the Instruction and installed the dimmers on shared neutrals in contravention of the Instruction.[169]  None the less, Huerta also testified that the Instruction was merely a recommendation from the manufacturer, and not a requirement.[170]  The Court is wholly unpersuaded by this argument.

To start, the Court finds Huerta's testimony on this matter to lack credibility.  Huerta's suggestion that the Instruction was optional is undercut by the fact that he also testified that he did not read the Instruction prior to installing the dimmers.[171]  Thus, Huerta's opinion that the Instruction was optional was not formed as a result of pre-installation review and interpretation of the Instruction, it was formed after the fact.  This calls into question the genuineness of Huerta's opinion on this matter.  Next, the Court turns to the plain language of the Instruction.  The Instruction expressly provides, "do not share neutrals."[172]  The plain language of the Instruction is unequivocal and is clearly not a recommendation.  Last, this Court heard expert testimony from Hamilton and

---

[167] ECF Nos. 376 at 87, ¶¶ 14-16; 377 at 31.
[168] ECF No. 291-3 at 17 (emphasis added).
[169] ECF No. 375 at 74-75.
[170] *Id.* at 75-76.
[171] *See id.* at 74-75.
[172] ECF No. 291-3 at 17.

Daniel, who both testified that the Instruction was not a recommendation, it was a requirement.[173]
The Court is persuaded by this testimony.

As such, the Court concludes that no reasonably prudent master electrician would install these dimmers without reading and in contravention of the manufacturer's express instructions. Installing these dimmers on the shared neutrals was a breach of First Class' duty of care to ECISD.

### ii. First Class' failure to ensure that the shared neutral issue was resolved prior to installing the second set of dimmers in the Schools

It was uncontroverted that Huerta failed to ensure that the shared neutral issue was resolved prior to installing the second set of dimmers in the Schools.[174]  First Class contends that Huerta was not responsible for ensuring the shared neutral issue was fixed prior to installing the second set of dimmers because it was outside of First Class' scope of work and ECISD had taken responsibility for fixing the shared neutral issue.[175]  The Court is unpersuaded by these arguments.  First, the Court notes that First Class' scope of work argument is irrelevant to a discussion of negligence. Even if First Class was not hired to rewire the schools, as discussed previously it was none the less a breach of First Class' duty to install dimmers on a shared neutral in contravention of the manufacturer's instructions.  What makes this second breach perhaps even worse is that First Class was fully aware of the shared neutral issue at this point and still installed a second set of dimmers anyway in contravention of the manufacturer's instructions.[176]  Hamilton's testimony at trial corroborates that it fell below the standard of care expected from a reasonably prudent master electrician to ensure that the shared neutral issue had been resolved prior to installing the second set of dimmers.[177]

---

[173] ECF Nos. 376 at 87, ¶¶ 14-16; 377 at 31.
[174] ECF No. 375 at 80-83.
[175] *See e.g., id.* at 83.
[176] ECF No. 375 at 80-83.
[177] *See* ECF No. 376 at 112-113.

As such, the Court finds that First Class' installation of the second set of dimmers without first resolving the shared neutral issue was also a breach of its duty of reasonable care owed to ECISD.

### iii. Failure to obtain the requisite permits

Also uncontroverted is that First Class failed to obtain the requisite permits to perform work on the Schools.[178]  Huerta testified as such at trial.[179]  Furthermore, evidence of a signed settlement agreement between First Class and TDLR was introduced ("*TDLR Agreement*").[180]  The TDLR Agreement stated that Huerta d/b/a First Class, admitted that it agreed with the TDLR's determination that he violated City of Edinburg Ordinance 2012-3602, which required First Class to obtain the required permit before working at the jobsite.[181]  For purposes of the TDLR Agreement, the jobsites were the schools that were relevant to the Contract, i.e. Eisenhower, Escandon, Monte Cristo, Truman, and Zavala.[182]  The Court finds that failing to obtain the permits required for the jobsite was a per se breach of First Classes' duty to ECISD.

The Court now turns to causation and damages.

### c. Proximate cause of ECISD's injury

To establish negligence under Texas law, ECISD must next prove that First Class' breaches proximately caused ECISD's damages.[183]  The components of proximate cause are (1) cause in fact; and (2) foreseeability.[184]  The test for cause in fact is whether the negligent act was a substantial factor in bringing about the injury and without which the injury would not have occurred.[185]

---

[178] ECF No. 375 at 73, ¶¶ 18-20.
[179] *Id.*
[180] *See* ECF No. 262-58.
[181] *Id.*
[182] *Id.*
[183] *See D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).
[184] *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).
[185] *Id.*

Cause in fact must be proven by evidence of probative force and not by mere conjecture, guess, or speculation.[186]  Cause in fact is not shown when a defendant's conduct is too remotely connected with the plaintiff's injury to constitute legal causation.[187]  For foreseeability, plaintiff must establish that a person of ordinary intelligence should have anticipated the danger created by the negligent act or omission.[188]  Foreseeability only requires that (1) the injury be of such a general character as might reasonably have been anticipated, and (2) the injured party be so similarly situated in relation to the wrongful act that the injury to him or to someone similarly situated might reasonably have been foreseen.[189]  Quite simply, foreseeability asks whether the injury might reasonably have been contemplated as a result of the defendant's conduct.[190]

All causes of action require damages to be established by admissible evidence.  If a litigant cannot establish damages, they have no causes of action.[191]  Under Texas law, where damaged property is susceptible to repairs, the owner may recover the reasonable costs of such replacements and repairs as are necessary to restore the damaged property to its condition immediately before the accident.[192]  The plaintiff must introduce evidence to show the reasonable and necessary cost of restoring the property to the identical condition it was in immediately prior to the damage thereto in order to make a prima facie case.[193]  Betterments, or added benefits, are not recoverable.[194]  A defendant carries the burden to show that repair of the damaged property was a betterment.[195]

---

[186] *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996).
[187] *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995).
[188] *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985).
[189] *Id.* at 551.
[190] *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987).
[191] *Van Horn vs. Chambers*, 970 S.W.2d 542, 543 (Tex. 1998) (damages required for negligence).
[192] *See Pasadena State Bank v. Isaac*, 149 Tex. 47, 50 (Tex. 1950).
[193] *Id.* at 51.
[194] *See Chem. Exp. Carriers, Inc. v. French*, 759 S.W.2d 683, 689 (Tex.App.—Corpus Christi 1988, writ denied); *see also Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872, 876 (Tex.App.—Fort Worth 1984, no writ); *Pasadena State Bank v. Isaac*, 149 Tex. 47 (Tex. 1950).
[195] *See Chem. Exp. Carriers, Inc.*, 759 S.W.2d at 689.

ECISD's claimed injuries are as follows:[196]

| | Repair/Replacement | Cost (all Schools) |
|---|---|---|
| i | Light Fixtures & Demo / Lighting Material and Labor / Lighting Control System / Controls / Labor / New Circuits / Lighting Branch Circuits | $1,643,283.00 |
| ii | Grounding and Bonding / P&P Bond | $55,015.00 |
| iii | Mobilization | $24,000.00 |
| iv | SPD | $16,600.00 |
| v | Reimbursable Expenses | $472.47 |
| vi | Parking Lot Labor and Material Estimate | $450,158.00 |
| vii | Fire Watch | $54,407.08 |
| vii | Emergency Wrapping of Wires | $13,885.25 |
| viii | Cond/J-boxes for Overfill | $3,648.00 |
| ix | Work Orders (Misc.) | $57,150.44 |
| x | Engineering Cost (Schools) | $149,665.51 |
| x | Engineering Cost (Parking Lots) | $33,761.87 |
| | | **Total: $2,502,046.62** |

As a preliminary matter, ECISD concedes in their Post-Trial Brief that a substantial portion of their claimed damages are not attributable to the actions of First Class, and that damages should be limited to $952,591.75.[197]  Specifically, ECISD concedes that First Class is not liable for damages pertaining "to the fraudulently-marked bulbs and for the lighting installed in the parking lots."[198]  However, confusingly ECISD also claims that First Class is still liable for, among other things, "the costs involved in replacing the parking lot lighting."[199]

The Court will consider whether First Class' breaches were the proximate cause of each category of damages in turn.

### i.  Light Fixtures & Demo / Lighting Material and Labor / Lighting Control System / Controls / Labor / New Circuits / Lighting Branch Circuits

---

[196] ECF Nos. 356-1, 356-2, 356-3, 356-4, 356-5, 356-6; Due to the highly consolidated nature of certain invoices, certain damages categories are combined into one.
[197] ECF No. 383 at 9-10.
[198] *Id.*
[199] *Id.*

ECISD first seeks $1,643,283.00 in damages for the cost of hiring Sigma and DBR to re-place all of the School's fixtures, bulbs, wiring, lighting controls, and cost of labor for same.[200] ECISD concedes that $1,065,535.00 of these costs pertain to replacing the fraudulently marked bulbs and thus are not attributable to the actions of First Class.[201]  Evidence introduced at trial shows that the primary reason ECISD replaced/upgraded all of the fixtures, bulbs, wiring, and lighting controls at each of the Schools was due to the fact that TDLR and the Edinburg Fire Marshal ("*Fire Marshal*") instructed ECISD to do so.[202]  By Salinas' own admission, replacement was not limited to repairing damages caused by the Melting Incidents.[203]  ECISD replaced every-thing that Enviro-Lite and First Class touched regardless of its functionality.[204]  ECISD replaced the entire lighting control systems of all six schools even though only Escandon and Cavazos ex-perienced electrical events resulting in several burnt dimmers and wiring damage.[205]  The incident at Truman was even more isolated, as it was only a single bulb that melted after it was replaced by an ECISD custodian.[206]

Salinas testified at trial that the complete replacement of the Schools' electrical system was done at the direction of the Fire Marshal and TDLR.[207]  However, the Fire Marshal and the TDLR did not require this.  In fact, Daniel testified that a complete redesign and remodel of the entire electrical system at the Schools was not necessary based on his inspection.[208]  Between the five letters from the Fire Marshal and the TDLR inspection report, ECISD was only directed to: replace

---

[200] *See* ECF No. 356.
[201] ECF No. 383 at 11.
[202] ECF Nos. 374 at 108, 110; 375 at 30; 262-20, 21, 22, 23, 24, 25.
[203] ECF No. 377 at 116-118.
[204] ECF No. 376 at 41, 43.
[205] *See* ECF Nos. 262-24; 356; 374 at 69-70; 377 at 64, 116-118.
[206] ECF No. 377 at 99.
[207] ECF Nos. 374 at 108, 110; 375 at 30; 262-20, 21, 22, 23, 24, 25.
[208] ECF No. 377 at 68, ¶¶ 20-25.

the dimmer switches with toggle switches,[209] institute a fire watch,[210] wrap the conductors on all the toggle switches that were used to replace the dimmers,[211] replace all damaged conductors,[212] fix the shared neutral issue,[213] and replace the fraudulent bulbs and the voided fixtures they were installed in.[214]  Neither TDLR nor the Fire Marshal recommended replacing equipment that was functional nor did they recommend a whole sale replacement of the entire lighting control system of all six schools.[215]  Furthermore, even if the TDLR and Fire Marshal did recommend replacing and upgrading the entire lighting system at each of the Schools, that recommendation alone would not be sufficient to establish cause in fact under Texas law.[216]  Nor would it be evidence of admissible damages, as damages are limited to the reasonable costs of such replacements and repairs as are necessary to restore the damaged property to its condition immediately before the accident.[217]

While the Court is sympathetic to the fact that ECISD was acting in furtherance of promoting the safety of its students, the question before the Court is whether First Class' breaches of duty, as discussed *supra*, are the cause in fact of ECISD's claimed damages.  Ultimately, notwithstanding five full days of testimony, the Court heard very little evidence that causally connects ECISD's claimed damages to First Class' breaches.  First Class' breaches in this case were that it twice installed dimmers on shared neutrals in contravention of the manufacturer's instructions and failed to obtain proper permitting.[218]  However, the only harm that ECISD established at trial that resulted from these breaches was the initial flickering issue at some of the Schools.[219]  Furthermore, the

---

[209] ECF No. 262-21.
[210] ECF No. 262-22.
[211] ECF No. 262-24.
[212] ECF Nos. 262-33; 377 at 46-47, 55-57.
[213] ECF No. 262-32. *See also* ECF No. 377.
[214] ECF No. 262-33.
[215] *See* ECF Nos. 262-21, 22, 24, 32, 33; 377 at 46-47, 55-57.
[216] *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996).
[217] *Pasadena State Bank v. Isaac*, 149 Tex. 47, 50 (Tex. 1950).
[218] *See* ECF No. 375.
[219] *See generally* ECF No. 374.

flickering issue was resolved following installation of the second set of dimmers even though they were also installed on shared neutrals.[220]  Salinas also provided testimony that the flickering issue, while concerning, was not viewed as a safety issue.[221]

What ultimately set things in motion was the Melting Incidents at the Schools.[222]  Following the Melting Incidents, an anonymous call was made to the Fire Marshal that initiated their involvement.[223]  As discussed, evidence at trial shows that the primary reason that ECISD hired Sigma and DBR to replace the Schools' electrical systems were because the TDLR and the Fire Marshal told ECISD to do so and out of concern for the safety of the students at the Schools following the Melting Incidents.[224]  Daniels also required ECISD to replace all of the fixtures in the Schools after it was discovered that fraudulently marked bulbs had been installed in fixtures throughout the Schools.[225]  However, the mere fact that ECISD was told to replace certain things within the Schools is not evidence of causation necessary to establish negligence.[226]  ECISD's replacements also exceeded what was recommended by the Fire Marshal and TDLR.[227]  The only affirmative evidence offered by ECISD justifying replacement of the fixtures and bulbs within the Schools was (1) the Intertek report showing that the bulbs were fraudulently marked and were not UL certified,[228] and (2) testimony from Daniel indicating that installation of non-UL certified bulbs voids the manufacturer's warranty on the fixtures that they are installed in.[229]

---

[220] ECF No. 378 at 17, 82-84.
[221] ECF No. 374 at 76.
[222] ECF Nos. 262-19; 374 at 93.
[223] ECF Nos. 262-19; 374 at 93.
[224] ECF Nos. 374 at 108, 110; 375 at 30; 262-20, 21, 22, 23, 24, 25.
[225] ECF Nos. 262-33; 377 at 46-47, 55-57.
[226] *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996).
[227] *See generally* ECF Nos. 262-19, 20, 21, 22, 23, 24, 25, 32, 33; 377.
[228] ECF No. 262-27.
[229] ECF No. 377 at 55.

While the Court is sufficiently convinced that replacement of the bulbs and fixtures was justified in light of this evidence, it was also clearly established at trial that First Class did not breach its duty when it installed these bulbs.[230] First Class, as sub-contractor, merely installed the bulbs that were sourced and provided by Enviro-Lite.[231] The bulbs contained markings that purported to be authentic. It was only after careful inspection from Daniel that he began to question the authenticity of the markings, and it was only after they were sent off to Intertek that it was confirmed that they were fraudulent.[232] ECISD's expert witness, Hamilton, testified that he did not blame First Class for failing to identify that the bulbs markings were not legitimate.[233] Nicanor, who himself is a master electrician, also testified that he did not realize the markings on the bulbs were fraudulent during his physical inspection of the bulbs.[234] No evidence was introduced suggesting that First Class' installation of dimmers on shared neutrals caused any harm to the fixtures in the Schools such that their universal replacement was justified. The fixtures were replaced because the Fire Marshal suggested ECISD do so in light of the voided warranties from the installation of the fraudulent bulbs.[235] ECISD also concedes that First Class is not responsible for the costs of replacing the fraudulent bulbs in their Post-Trial Brief.[236]

As such, the Court concludes that ECISD has failed to demonstrate that the costs of replacing the bulbs or the fixtures were proximately caused by First Class' breach of duty.

ECISD also asserts that First Class should bear the cost of replacing all of the dimmer switches and wiring in all of the Schools.[237] As discussed, ECISD must provide evidence showing

---

[230] ECF No. 376 at 190, ¶¶ 12-16, 194.
[231] ECF No. 376 at 38, 126, 127.
[232] ECF No. 377 at 46.
[233] ECF No. 376 at 190, ¶¶ 12-16, 194.
[234] ECF No. 378 at 144.
[235] ECF Nos. 374 at 108, 110; 375 at 30; 262-20, 21, 22, 23, 24, 25.
[236] ECF No. 383 at 11.
[237] *See* ECF No. 356.

that First Class' breaches were the cause in fact of their claimed damages and that the harm caused was foreseeable.[238]  Under Texas law, if property can be repaired, the plaintiff is only entitled to the costs of restoring the property to its original condition.[239]  Here, ECISD acknowledges that the Schools' electrical systems as a whole were upgraded and replaced regardless if the equipment in question was functional.[240]  Aside from the fixtures and bulbs, the only other property damage that ECISD provided evidence for at trial stemmed from the Melting Incidents.  ECISD, however, failed to provide evidence that First Class was ultimately responsible for causing the dimmers to melt.

The Court received no testimony from either of ECISD's expert witnesses nor did it receive any other testimony sufficient to show that installation of the dimmers on the shared neutral was what caused the fire.[241]  At trial, Hamilton testified that one consequence that can occur as a result of installing dimmers on a shared neutral is that the circuits that they operate on can be overloaded, which can result in overheating and even fires.[242]  Hamilton, however, expressly declined to provide testimony as to whether he thought First Class' installation of dimmers on shared neutrals in this case caused the Melting Incidents at the Schools as he did not conduct a fire origins analysis.[243]  Generalized statements of harm that can occur in the abstract is insufficient to establish causation.[244]  In addition to the lack of affirmative evidence offered by ECISD showing cause, there was also evidence introduced that undermines a causal connection between First Class' actions and the Melting Incidents.  Notably, Phillips testified that there was an electrical storm immediately

---

[238] *See Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).
[239] *See Pasadena State Bank v. Isaac*, 149 Tex. 47, 51 (Tex. 1950).
[240] ECF No. 376 at 41, 43.
[241] *See generally* ECF Nos. 376, 377.
[242] ECF No. 376 at 110-111.
[243] *Id.* at 168-169.
[244] *See Leitch v. Hornsby*, 935 S.W.2d 114, 119 (Tex. 1996).

preceding the dimmers melting at Escandon and Cavazos,[245] Salinas testified that Escandon had a history of losing power,[246] and an independent review of two of the melted dimmers by Leviton Manufacturing Co., Inc. concluded that an external electrical event caused the dimmers to melt.[247]

Because ECISD has failed to show that First Class' installation of the dimmers on the shared neutral caused the fires, ECISD cannot recover the costs of replacing the dimmers or burnt wiring that were the result of those fires. Furthermore, even if ECISD was able to prove that First Class caused the fires, ECISD would be limited to damages for replacing the dimmers and wiring that were actually damaged.[248] There was no evidence provided that the dimmers themselves were defective such that replacing every single one of them was warranted.

As such, ECISD has failed to show a causal connection between First Class' breaches and the need to repair/replace the fixtures, bulbs, wiring, lighting controls, and cost of labor for same. Thus, associated damages are also denied.

### ii. Grounding and Bonding / P&P Bond

ECISD next seeks $55,015.00 in damages for the cost of repairing the grounding and bonding issues at the Schools.[249] The Court received testimony at trial that the grounding and bonding issues identified in the Sigma Report were unrelated to the Melting Incidents or the shared neutral issue.[250] These issues pre-dated any work conducted by First Class or Enviro-Lite and were merely existing issues that Sigma recommended be addressed along with everything else.[251]

---

[245] ECF No. 375 at 24.
[246] ECF No. 374 at 70.
[247] ECF No. 195-15.
[248] *See Pasadena State Bank v. Isaac*, 149 Tex. 47, 51 (Tex. 1950).
[249] ECF No. 356.
[250] ECF No. 378 at 42-43.
[251] ECF Nos. 262-12; 378 at 42-43, 148-51.

As such, ECISD has failed to show a causal connection between First Class' breaches and the need to fix the grounding and bonding issues at the Schools.  Thus, associated damages are also denied.

### iii.   Mobilization

ECISD next asserts that First Class' is responsible for the $24,000 in "mobilization" costs incurred.[252]  The Court received limited testimony as to what the "mobilization" costs refer to.[253] Based on Salinas' testimony, the Court understands "mobilization" to be a cost incurred for DBR to come out and perform work at the Schools.[254]  However, it is unclear if this cost is for labor or is merely an upfront fee charged for showing up to perform work.  Puentes, who worked for DBR at the time, did not provide any testimony as to what the "mobilization" charge refers to when he testified.[255]   Without clear evidence as to what these damages even are, the Court cannot assess causation.  ECISD has failed to show with probative force that First Class' breaches of duty caused it to incur these damages.

As such, ECISD has failed to show a causal connection between First Class' breaches and the claimed "mobilization" damages.  Thus, associated damages are also denied.

### iv.   SPD

ECISD asserts that First Class is liable for the $16,600 in costs pertaining to "SPD."[256]  The Court heard no testimony and received no evidence as to what the costs associated with "SPD" pertain to.[257]  ECISD has failed to show with probative force that First Class' breaches of duty caused it to incur these damages.

---

[252] *See* ECF No. 356.
[253] *See id.*
[254] ECF No. 377 at 131.
[255] See generally ECF No. 377 at 77-90.
[256] *See* ECF No. 356.
[257] *See id.*

As such, ECISD has failed to show a causal connection between First Class' breaches and the "SPD" damages.  Thus, associated damages are also denied.

### v.      Reimbursable expenses

ECISD asserts that First Class is liable for the $472.47 in reimbursable expenses.[258]  The Court heard no testimony and received no evidence as to what these reimbursable expenses pertain to.[259]  ECISD has failed to show with probative force that First Class' breaches of duty caused it to incur these damages.

As such, ECISD has failed to show a causal connection between First Class' breaches and the reimbursable expenses.  Thus, associated damages are also denied.

### vi.      Parking Lot Labor and Material Estimate

ECISD next asserts that the $450,158.00 in estimated costs to replacing the lighting systems in the parking lots of the Schools should be borne by First Class.[260]  Damages in Texas must be demonstrated through more than just speculation or estimation.  Testimony from Nicanor at trial demonstrates that no substantive analysis was done on the parking lots to determine what is causing issues in the parking lots or what, if anything, is actually damaged and needs to be replaced.[261]  Furthermore, the parking lost replacement costs pertain to replacement of the fixtures, bulbs, and wiring, which this Court has already determined First Class is not liable for.[262]  Furthermore, ECISD concedes that First Class is not responsible for the parking lot costs in their Post-Trial Brief.[263]

---

[258] ECF No. 356.
[259] *See id.*
[260] ECF No. 356.
[261] ECF No. 378 at 140.
[262] *See generally id.*
[263] ECF No. 383.

As such, ECISD has failed to show a causal connection between First Class' breaches and the estimated parking lot repair costs.  Thus, associated damages are also denied.

### vii.     Wrapping of wires & fire watch

ECISD contends that First Class is responsible for the $54,407.08 and $13,885.25 in costs incurred instituting a fire watch and wrapping the wires at the Schools respectively.[264]  Following the Melting Incidents and at the direction of the Fire Marshal, ECISD instructed its own school engineers to wrap all of the wires on every fixture connected to a dimmer switch at the Schools to safeguard against further electrical events.[265]  ECISD also instituted a fire watch at the Schools at the direction of the Fire Marshal.[266]  As discussed, ECISD has failed to show that First Class was responsible for the Melting Incidents, and as such the costs of wrapping the wires and the fire watch at the Schools were not caused by First Class' breaches.

As such, ECISD has failed to show a causal connection between First Class' breaches and the wrapping of wires and fire watch.  Thus, associated damages are also denied.

### viii.    Cond/J-boxes for Overfill

ECISD asserts that First Class is responsible for the $3,648.00 in costs associated with repairing the overfilled junction boxes at the Schools.[267]  However, ECISD was unable to demonstrate at trial that the overfilled junction boxes were the result of work performed by First Class. Lima testified that he did not know if the junction boxes were overfilled prior to work performed by Enviro-Lite and First Class.[268]  Nicanor was unable to shed much light on the cause of the

---

[264] ECF No. 356.
[265] ECF No. 377 at 129-130; 262-24.
[266] ECF No. 262-22.
[267] ECF No. 356.
[268] ECF No. 378 at 43.

overfilled junction boxes either.[269]   Again, cause in fact must be demonstrated with probative force and ECISD has failed to do so.

As such, ECISD has failed to show a causal connection between First Class' breaches and the junction boxes. Thus, associated damages are also denied.

### ix. Work orders (misc.)

ECISD asserts that First Class is responsible for $57,150.44 in costs associated with various miscellaneous work orders performed by ECISD employees.[270]   Miscellaneous work orders include costs associated with fixing the shared neutral issue, checking and inspecting various equipment at the Schools, and the costs of switching the dimmers temporarily back to toggle switches following the Melting Incidents.[271]   Based on the testimony from Salinas and the work orders in the record, the miscellaneous costs incurred by the ECISD primarily pertain and were in response to the Melting Incidents, which the Court has already ruled First Class was not responsible for.[272]   With regard to the costs of fixing the shared neutral issue, the Court notes that it was uncontroverted that the shared neutral issue was not a harm that First Class caused.  The Schools had, by all accounts, run on a shared neutral setup since they were built.[273]   The shared neutral electrical setup worked fine for toggle switches.[274]   First Class' breach of duty was merely installing dimmers requiring a dedicated neutral on a shared neutral.  However, the costs associated with fixing the shared neutral are not a harm caused by First Class' breach of duty, as First Class did not cause the Schools to be run on a shared neutral.

---

[269] *See id.* at 155-56.
[270] ECF Nos. 356, 376 at 211.
[271] ECF No. 376 at 212-13.
[272] *See generally* ECF No. 356; 376 at 212-13.
[273] ECF No. 376 at 87-88.
[274] *Id.* at 102.

As such, ECISD has failed to show a causal connection between First Class' breaches and the miscellaneous work orders.  Thus, associated damages are also denied.

###    x.    Engineering costs (school and parking lot)

ECISD last contends that the $149,665.51 and $33,761.87 in engineering costs paid to Sigma and DBR for designing the lighting control replacement system in the Schools and School parking lots respectively should be borne by First Class.[275]  However, because ECISD has failed to show that any of the work performed by Sigma and DBR were to remedy harm caused by First Class, ECISD has also failed to show with probative force that the engineering costs incurred were caused by First Class' breaches of duty.

As such, ECISD has failed to show a causal connection between First Class' breaches and the engineering costs paid to Sigma and DBR. Thus, associated damages are also denied.

Accordingly, having failed to carry its burden to show that any of its claimed damages were proximately caused by First Class' breaches, ECISD's claim for general negligence is denied.

The Court will next consider ECISD's claim for gross negligence.

## C. Gross negligence

Under Texas law, "gross negligence" requires: (1) when viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and the magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.[276]  Evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence.[277]  Gross negligence involves more

---

[275] ECF No. 356.
[276] *See* TEX. CIV. PRAC. & REM. CODE ANN. §41.001(11); Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998).
[277] *See Ellender*, 968 S.W.2d at 921.

culpable conduct than ordinary negligence.[278]  Objectively, the defendant's conduct must involve

an extreme risk of harm, a threshold significantly higher than the objective reasonable person test

for negligence.[279]  Subjectively, the defendant must have actual awareness not just of risk, but of

an extreme risk created by the conduct.[280] A finding of negligence is a prerequisite to establishing

gross negligence.[281]

Here, because this Court has already denied ECISD's claim for general negligence its claim

for gross negligence fails as a matter of law.  A finding of general negligence is a prerequisite to

establishing gross negligence in Texas.[282]  Furthermore, this Court also finds that ECISD failed to

carry its burden to demonstrate that installation of the dimmer switches on a shared neutral in-

volved an "extreme degree of risk" as required under Texas law.  While installation of the dimmers

on a shared neutral was a breach of First Class' duty, the Court received no evidence that doing so

carried an extreme degree of risk.  The only harm that ECISD was able to demonstrate that resulted

from the faulty installation was the initial dimming problem, which by Salinas' own admission

was not viewed as a safety concern.[283]

Accordingly, ECISD's claim for gross negligence is denied.

## D. Negligence per se

ECISD next asserts a claim for negligence per se against First Class.  Under Texas law,

negligence per se is not a separate cause from negligence but is instead "merely one method of

proving a breach of duty."[284]  As such negligence per se exists where a plaintiff shows: (1) the

---

[278] *See Wal-mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 325-26 (Tex.1993) (holding that gross negligence must involve an "objectively higher risk than ordinary negligence").
[279] *Id.* at 326.
[280] *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 22 (Tex. 1994).
[281] *See Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (a finding of ordinary negligence is a prerequisite to a finding of gross negligence).
[282] *See id.*
[283] ECF No. 374 at 76.
[284] *Reynolds v. Murphy*, 188 S.W.3d 252, 267 n. 20 (Tex.App.–Fort Worth 2006, pet. denied); *Thomas v. Uzoka*, 290

defendant's act or omission is in violation of a statute or ordinance; (2) the plaintiff is within the class of individuals the statute was enacted to protect; (3) the injury is of a type that the statute was designed to prevent; and (4) the defendant's act or omission proximately caused the injury.[285]

As discussed, negligence per se is not a separate cause of action from negligence but is instead merely one method of proving a breach of duty.[286]  ECISD has already established duty and breach previously in its claim for general negligence.  ECISD has, however, failed to demonstrate that its damages were proximately caused by First Class' breaches of duty.  Demonstrating that damages were proximately caused by a defendant's breaches of duty is also an element of negligence per se.[287]  Here, the Court has already found that ECISD has failed to show that any of its claimed damages were proximately caused by First Class' breaches of duty.

Accordingly, ECISD's claim for negligence per se is denied.

## E. Negligent failure to warn or instruct

ECISD next asserts a claim against First Class for negligent failure to warn or instruct.[288] Notwithstanding that this Court expressly directed ECISD to provide this Court with briefing on all of its remaining causes of action against First Class,[289] ECISD failed to do so with regard to its negligent failure to warn or instruct claim.[290]  This Court granted ECISD a generous amount of time to brief its causes of action and ECISD inexplicably failed to do so on this claim.  ECISD also fails to provide the legal standard for this claim either in their Complaint or in the Joint Pre-Trial Statement.[291]  None the less, the Court will consider this claim.

---

S.W. 3d 437, 445 (Tex. App.–Houston [14th Dist.] 2009, pet. denied).
[285] *Id.*
[286] *Id.*
[287] *Id.*
[288] ECF No. 78.
[289] ECF No. 377 at 168-69.
[290] See ECF No. 383.
[291] See ECF Nos. 78, 246.

In Texas, a negligent failure to warn is a variety of products liability claim.[292]  To prove a products liability claim premised upon a theory of negligence, a plaintiff must demonstrate: (1) that the manufacturer owed a duty to the plaintiff; (2) that the manufacturer breached that duty; (3) that the plaintiff was injured: and (4) that the manufacturer's breach of the duty was the proximate cause of the plaintiff's injury or damages.[293]  In negligent failure to warn cases, a manufacturer has a duty to warn if a reasonable prudent person in the manufacturer's position would warn of hazards associated with the use of its product.[294]  While a manufacturer or supplier in certain situations may depend on an intermediary to communicate a warning to the ultimate user of a product, the presence of an intermediary does not excuse the manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product.[295]

Here, as discussed, ECISD has failed to show that any of its claimed damages were proximately caused by First Class' breaches of duty as is required to establish a claim for negligent failure to warn or instruct under Texas law.[296]  Furthermore, the only product that was proven to be defective at trial were the fraudulently marked bulbs, which ECISD has conceded First Class was not responsible for.[297]  As discussed *supra*, the evidence also shows that First Class had no way of knowing the bulbs were fraudulent.[298]

Accordingly, ECISD's claim for negligent failure to warn is denied.

## F. Negligent retention, supervision, and training

---

[292] *See McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 431 (5th Cir. 2001).
[293] *Id.*
[294] *Id.* at 432.
[295] *Id.*
[296] *Id.*
[297] ECF No. 383 at 11.
[298] ECF No. 376 at 190, ¶¶ 12-16, 194.

Last, ECISD asserts a claim against First Class for negligent retention, supervision, and training.[299]  ECISD also failed to brief this cause of action in their Post-Trial Brief as instructed.[300]

The elements of a claim for negligent supervision—like all negligence claims—are (1) defendant owed a legal duty to plaintiff; (2) defendant breached that duty; (3) plaintiff suffered damages; and (4) the damages were proximately caused by defendant's breach.[301]  In order for a party to prevail on a claim for negligent hiring or supervision, the plaintiff must establish that not only was the employer negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff.[302]  The negligent hiring, retention, and supervision claims are simple negligence causes of action that are based on an employer's direct negligence rather than on vicarious liability.[303]  An employer has the duty to adequately hire, train, and supervise employees, and the negligent performance of those duties may impose liability if the complainant's injuries are the result of the employer's failure to take reasonable precautions to protect the complainant from misconduct of its employees.[304]

Here, very little evidence was offered in support of this claim at trial.  Huerta testified that he had employees that assisted him with work that was performed at the Schools, but no testimony was solicited regarding who these employees were, what practices were employed by Huerta in hiring these employees, what tasks these employees performed at the Schools, how they performed those tasks, or what instruction/supervision Huerta gave to these employees.[305]  The only breaches of duty that ECISD was able to prove at trial were those committed by Huerta himself as discussed *supra*, none of which pertain to the retention, instruction, or supervision given to his employees.

---

[299] ECF No. 78.
[300] *See* ECF No. 383.
[301] *Holcombe v. U.S.*, 388 F.Supp.3d 777, 806 (W.D. Tex. 2019).
[302] *Id.*
[303] *Id.*
[304] *Id.*
[305] *See* ECF No. 375 at 70.

As such, ECISD has failed to show that First Class negligently retained, supervised, or instructed its employees.  Furthermore, as discussed *supra*, ECISD has failed to show that any claimed damages were proximately caused by First Class' breaches of duty.

Accordingly, ECISD's claim for negligent retention, supervision, and training is denied.

### VIII.        CONCLUSION

A judgment consistent with this Memorandum Opinion will be simultaneously entered on the docket herewith.

SIGNED April 25, 2023

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge